In the Matter of the Claim of MARTHA CRESCI, Respondent, against MIKE KRASILOUSKY TRUCKING Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 27, 1958.

*Ralph S. Stowell* and *Joseph D. Edward* for appellants.

*Louis J. Lefkowitz, Attorney-General (Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Herman J. Roshwald* for claimant-respondent.

GIBSON, J. An employer and its insurance carrier appeal from a decision and award of the Workmen's Compensation Board whereby death benefits were awarded a deceased employee's widow and minor child. Appellants contest the board's findings (1) that the accident and injuries sustained by decedent on January 10, 1952 and which caused his death were consequential to the industrial accident and injuries sustained in the same employment on July 7, 1947; (2) that the employer and carrier were not entitled to have credited against the award of death benefits the net proceeds of the settlement of a third-party action predicated on the first accident, brought by decedent and compromised by him in his lifetime, without the carrier's consent; (3) that the failure of the widow, as administratrix of decedent's estate, to prosecute an action against the City of New York for alleged negligence causing the second accident did not bar the claim herein for death benefits under the Workmen's Compensation Law; and (4) that the pending action by the administratrix against her former attorneys for malpractice, predicated on their failure to file a timely claim against the City of New York, was not a third-party action within the purview of subdivision 1 of section 29 of the Workmen's Compensation Law, and that, therefore, the carrier was not entitled, pursuant to section 27, to suspend payment into the aggregate trust fund of the commuted value of the award for death benefits.

The finding that decedent's second accident and resultant death were consequential to the prior accident sustained in the employment is supported by substantial evidence. As a result of the first accident, decedent sustained a large, deep wound in the left thigh, resulting in some permanent injury, and injuries to the right foot and leg necessitating amputation of that leg about six inches below the knee. Some four months later, operative revision of the stump, which had not healed, was necessary by reason of ulceration and, upon such revision, it was impossible to completely cover the tibia with muscle flap. Later, decedent was furnished with an artificial limb which was subsequently replaced with another, upon which he was able to walk " fairly well ". There was testimony as to the insecurity of artificial limbs generally and as to the necessity of adjustments over long periods of time. Medical examinations in 1950 revealed marked atrophy of the muscles of the right thigh, with restriction in mobility at the right hip, as well as marked diminished strength of the left lower extremity, extension defect at the left knee and flexion defect at the left hip.

The accident in issue here occurred when decedent, while walking upon a city sidewalk, stepped into a hole or depression and fell, twisting his right leg under him. As a result, he sustained an extensively comminuted fracture of the lower end of the right femur involving both condyles, with a T-type linear fracture extending upward into the shaft of the bone and a fracture downward into the knee joint. Decedent's brother, in describing the accident, testified that decedent "sort of fell over the device", falling over on one side so that the artificial leg was under him as though he were sitting on it. Decedent instructed his brother to unstrap the leg because it was twisted, and to take him to the hospital. There, the attending surgeon, in addition to the fractures, noted "considerable anterior bowing of the fracture with posterior displacement of the condyles" and thereupon performed an open reduction "because of the fact that he had an amputated lower leg and of the fact that he had gross displacement." During the operation, complications ensued which caused death 10 days later. The evidence which has been outlined amply supports the board's finding of causation. We perceive no distinction between this case and that of *Matter of Dickerson* v. *Essex County* (2 A D 2d 516) in which the original industrial accident was found causative of injuries subsequently sustained when claimant fell, whether the fall was caused by the slipping of a crutch or by the disabled leg "giving out". Directly in point, also, is *Matter of Swanson* v. *Williams & Co.* (278 App. Div. 477, affd. 304 N. Y. 624) holding that an accident due, in part, to the employee's use of crutches, was consequential to the original compensable accident and injuries which made their use necessary. The *Swanson* case also established the proposition that the prior accident need be but a contributing cause of the subsequent one and that the concurrence of an additional cause (such as the employee's intoxication in that case and the possible negligence of a third party in this) in no way relieved the employer from liability. Appellants' reliance on *Matter of Sullivan* v. *B & A Constr.* (307 N. Y. 161) is unfounded. There the cause of the subsequent accident was found to be claimant's temerity in operating at an excessive rate of speed an automobile unequipped with auxiliary equipment when he knew that his injured knee was likely to lock so that he could not use the foot brake. We thus distinguished the *Sullivan* case from that of *Dickerson* (*supra*, p. 519) holding: "The risk of a fall while using crutches, in a reasonable manner in the course of proper activities, is one of the normal or ordinary risks inherent in the situation created by the occurrence of a

leg fracture.'' Here, the normal and reasonable act of decedent in walking upon a city street with the aid of the prosthesis is even further removed from the rash conduct which precipitated the accident in the *Sullivan* case.

The appellants' second contention relates to the board's refusal to credit the award with a part of the net proceeds of decedent's settlement, without the carrier's consent, of his third-party cause of action predicated upon the first accident. From the settlement proceeds, the workmen's compensation received by decedent was repaid. He gave a substantial sum to his wife, nearly all of which remained in her bank account, after his death, and he deposited a smaller sum in an account held jointly with his wife. His estate was administered in the Surrogate's Court. The medical and hospital expenses occasioned by the second accident were paid from the estate and approximately $6,000 was paid to decedent's widow and child upon final distribution. Appellants contend that the amounts of approximately $16,500 and $4,000 thus traced to the possession of the widow and child, respectively, from the proceeds of the recovery for personal injuries sustained in 1947 should be credited against the benefits awarded for the death occurring in 1952.

The rights of employers and carriers as respects recoveries against third parties are created and defined by section 29 of the Workmen's Compensation Law. We find therein no support for appellants' position. That section treats causes of action for personal injuries and those for death damages as separate remedies, as clearly they are, even when the same wrong gives rise to both (Decedent Estate Law, §§ 119, 120, 130). The subrogatory and other rights conferred by section 29 are there treated as similarly separate and independent, as respects the separate causes of action to which they apply. '' Disability compensation and death benefits are distinct from each other and are entirely unrelated. Disability compensation is paid to an injured employee. Death benefits are for a decedent's dependents. Likewise the two causes of action, the one for wrongful death and the other for personal injuries, are separate and distinct. The former is for the loss resulting to the persons pecuniarily damaged by his death; while the latter is for the tortious injury to the person or property of the deceased during his lifetime.'' (*Matter of Schwabacher* v. *International Salt Co.*, 272 App. Div. 173, 175, affd. 298 N. Y. 726.)

Although the damages which decedent recovered comprehended the possibility of subsequent accidents attributable to the original disability sustained, appellants' contention is not

thereby strengthened, since the hospital and medical expenses resulting from the second accident were paid from decedent's estate and are not included in the board's award. The damages recovered by decedent were for his personal injuries, including such elements as pain and suffering which are not comprehended in payments by employers and carriers under the Workmen's Compensation Law, and the settlement proceeds remaining after reimbursement of the compensation received were his to do with as he pleased. (See *Hitt* v. *Cardillo*, 131 F. 2d 233, cert. denied 318 U. S. 770.) That some part of the proceeds reached the hands of his dependents, by gift and by inheritance, is of no moment. It may be worthy of remark that appellants claim as a credit against the award only the unexpended proceeds and would thus penalize such dependents as these, who, with decedent, chose to conserve, rather than to dissipate the moneys received.

Appellants rely upon *Matter of Solomone* v. *Degnon Contr. Co.* (194 App. Div. 50), decided by this court in 1920, which we deem no longer authoritative in view of the later decision in *Matter of Schwabacher* v. *International Salt Co.* (*supra*). We do not agree with appellants' contention that the *Schwabacher* case turned upon the fact that the employee had not taken compensation, as the discussion of that subject was clearly in support of the conclusion that "the appellant, insurance carrier, was not entitled to be subrogated *in the personal injury action*" (emphasis supplied) (p. 176) and there was no indication that otherwise the widow's share, upon distribution of the estate, in the administrator's recovery upon the personal injury cause of action, expressly held to be "separate and distinct" from the wrongful death cause of action, would have been credited against the board's award of death benefits. Even if appellants' analysis of the *Schwabacher* case were correct, the result here would not be different as in this case the carrier was reimbursed for the compensation paid decedent following the first accident and the medical and hospital expenses occasioned by the second were paid from decedent's estate and are not included in the award appealed from.

We find no merit in appellants' additional assertion that the failure of decedent's widow, who is also the representative of his estate, to prosecute an action against the City of New York, predicated upon the condition of the sidewalk, bars any award in compensation. In support of their position, appellants cite *Matter of Gruhn* v. *Miller Brown, Inc.* (275 App. Div. 975) which is not in point, turning, as it did, on the provision as to approval of the compromise of a third-party action. Appel-

lants cite, also, a number of cases decided under section 29 as formerly constituted (and as amd. by L. 1917, ch. 705; L. 1922, ch. 615; L. 1924, ch. 499) which required, where a third-party cause of action was involved, that claimant formally elect whether to sue or to claim compensation, and further provided that an election to bring action barred any claim except for deficiency compensation, while an election to claim compensation immediately subrogated the employer or carrier to the claimant's rights against the third party. None of the cases so cited were decided upon grounds in any way relevant here except *Matter of McKee* v. *White* (218 App. Div. 300, affd. 244 N. Y. 610). In that case, claimant had taken the then necessary affirmative action of electing to sue his third-party action, which was eventually dismissed on his default. The Statute of Limitations had run before the carrier learned of the dismissal, with the result, as the court held, that its rights had been '' sacrificed and that the claimant is estopped from asserting a claim for compensation ''. Clearly, the basis of the principle for which appellants contend here is that a claimant may not have compensation after he has acted affirmatively to deprive the employer or carrier of its right to subrogation (whether, under the old statute, by formally electing to sue or, under the present one, by commencing action), and has thereafter discontinued or submitted to a dismissal for lack of prosecution, after running of the Statute of Limitations. Even this rule's application is mitigated when a dismissal for failure to prosecute involves no fault on the part of claimant. (*Matter of Husing* v. *Medical Laboratories,* 285 App. Div. 13.)

This case does not involve a situation under the rule asserted. The present provisions of subdivision 1 of section 29 are purely permissive. The employee or, in case of death, his dependents, '' need not elect '' as between remedies but '' may '' take compensation and, within the times limited, pursue a remedy against another, the word '' may '' clearly governing both clauses. The second sentence imposes the same time limitations in the event the claimant or his dependents '' desire '' to bring an action. Protection is afforded the employer and carrier by subdivision 2 of the same section, providing that the failure to bring action within the prescribed time limitations shall operate as an assignment of the cause of action to the employer or carrier responsible for payment of compensation, subject to certain provisions as to notice. The difficulty in the situation existing in this case is that the time for filing a claim against the city had expired before the date on which the cause of action became assignable to the carrier. The statute pro-

vides no separate or different limitation of time with respect to the assignment of those causes of action which can be prosecuted only after the filing of notice of claim. The absence of such provisions in no way enlarges appellants' rights or limits those of claimant. If the rule were as appellants contend, and were pursued to its logical conclusion, the result would be to jeopardize every claim in compensation arising out of an industrial accident in which a municipal corporation might be involved as a third party, unless the claimant should file a claim and bring and prosecute to a conclusion a third-party action, however tenuously grounded. A possible but merely mitigating alternative would be to cast upon the board the nearly impossible burden of weighing the merits of each potential action at law not sued so as to determine whether the injury or death was, in fact, not caused by '' the negligence or wrong of another not in the same employ '' (§ 29, subd. 1) so that, in such event, claimant's failure to sue would be justified.

We find untenable the final contention advanced by appellants,—that they are entitled to suspend payment of the commuted value of the award into the aggregate trust fund until the termination of the pending action brought by the administratrix against her former attorneys to recover for their alleged negligence in failing to file a timely claim against the City of New York, as a condition precedent to an action. A payment of this nature may thus be held in abeyance pending the determination of a third-party action by or on behalf of an employee '' injured or killed by the negligence or wrong of another not in the same employ ''. (Workmen's Compensation Law, § 27, subd. 2; § 29.) Clearly, the action presently pending is not within the language, nor, in our view, within the contemplation, of the Workmen's Compensation Law provisions cited. It is true that in *Matter of Parchefsky* v. *Kroll Bros.* (267 N. Y. 410) an action predicated upon a physician's malpractice, which aggravated a compensable injury, was held to be a third-party action within the meaning of section 29. But there it was said (p. 418): '' To the extent that the injury for which compensation may be made under the Workmen's Compensation Law *includes* the result of malpractice, the ' injury ' is due to the negligence of the physician within the spirit and letter of the statute.'' (Emphasis as in original.) In this case the supposed malpractice is not an injury, within the narrow definition of the statute (§ 2, subd. 7), nor did it (as in *Parchefsky*) aggravate an injury. The wrong is a negligent omission whereby the administratrix was deprived of her right to seek damages against the original tort-feasor. Since

there was no "injury" within the purview of the statute, it follows that if the appellant carrier possesses rights touching the malpractice action, they are not derived from the Workmen's Compensation Law and may not be enforced thereunder.

Whether an independent remedy exists is questionable. It seems to us doubtful that the legal relationship of the parties is such as to support the prosecution of a common-law action. In *Employers' Liability Assur. Corp.* v. *Daley* (271 App. Div. 662, affd. 297 N. Y. 745), a town's insurance carrier, which had paid to injured firemen the benefits accorded them by section 205 of the General Municial Law, was denied indemnity against the tort-feasors who caused the injuries, since the tort-feasors' liability to the firemen "was a tortious one, while that of the town was statutory and so quasi-contractual", with the result that the wrongdoers' tort "did not subject them to liability under section 205 nor did the town, by its payment, satisfy the [wrongdoers'] tort liability to the firemen." (P. 665.) Hence, there appeared no basis for indemnity under common-law principles.

If, in the absence of a statute, there is no right of indemnity of a compensation carrier as against the tort-feasor who caused the injury, there would seem to be none as against a wrongdoer less directly related and whose act had no impact upon the injury itself. We do not explore the problem, however, as it is clear that the existence of a common-law right of indemnity would not, in any event, authorize the suspension of payment as permitted by section 27, which clearly refers only to such third-party actions as are contemplated by section 29 and, of necessity, controlled by it. We hold only that appellants have no remedy within the frame of the Workmen's Compensation Law, to which we must look for definition of their rights (*Matter of Parchefsky* v. *Kroll Bros., supra,* p. 415).

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., BERGAN and COON, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board.