544 P.2d 706

Josephine V. TRISTE, widow, Calistro M. Triste, deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Arizona Hide & Metal Co., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 1230.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 15, 1976.

Rehearing Denied Feb. 23, 1976.

Review Denied March 23, 1976.

**490**

Lawrence Ollason, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, by J. Victor Stoffa, Phoenix, for respondent Carrier and respondent Employer.

## OPINION

SCHROEDER, Judge.

This petition for review of an Industrial Commission award presents several issues relating to death benefits under our Arizona Workmen's Compensation Act. The issues pertain to the extent of the carrier's lien upon proceeds of a settlement in a third party action; whether benefits may be awarded with respect to a child conceived after the industrial injury; and the proper amount of burial allowance.

The case arises out of tragic circumstances. Calistro M. Triste, the deceased, was employed by respondent employer, Arizona Hide & Metal Co., on December 20, 1968, when he suffered an industrial injury to his back. In July of 1969, while being prepared for back surgery, he suffered a cardiac arrest after administration of anesthesia. The arrest resulted in massive brain damage, and Mr. Triste remained in a comatose condition until February 14, 1973, when he died. Mr. Triste was survived by his wife and three minor children. It is not disputed that the death was sufficiently causally related to the industrial injury so as to warrant death benefits pursuant to A.R.S. § 23–1046.

Prior to Mr. Triste's death, a medical malpractice action was filed against the anesthesiologist. The action was maintained by petitioner, Josephine Triste, as guardian of her husband's person and estate, and also, at least purportedly, as next best friend of their minor children. That action was settled for $400,000.00, in return for a general release of all present and future claims. The settlement agreement was executed by Josephine Triste, individually and as guardian of her husband's estate and person, and as next best friend of the children.

Petitioner then filed for workmen's compensation death benefits. The respondent carrier accepted the claim for benefits on behalf of the wife and two children but claimed a right to set off the net amount

of the settlement proceeds against its total survivor benefit obligations for the wife and children.* In addition, the carrier denied benefits for the third minor child, born after the industrial accident. After a hearing, the Commission entered its award finding in favor of the carrier on these matters.

The initial question before us is whether the Commission correctly decided that the carrier, given the circumstances of the settlement with the anesthesiologist, was entitled to set off the settlement proceeds against the death benefits due for the children.

A.R.S. § 23–1023(C) provides that where there is an action against a third party tortfeasor, the insurance carrier has a lien in the amount actually collectible from the other person to the extent of the carrier's obligation for compensation benefits. That section further provides that where there is a settlement of a third party action for an amount less than the compensation benefits, that settlement must be approved by the carrier. This is to prevent acceptance of too small an amount and avoid prejudice to the carrier's subrogation rights. *Hornback v. Industrial Commission of Arizona*, 106 Ariz. 216, 474 P.2d 807 (1970).

The parties here do not dispute that if the settlement was a valid compromise of the potential claims of the children, then the carrier would be entitled to set off the net amount of the settlement proceeds after deducting the expenditures for the deceased against its obligations for payment of death benefits. The carrier did approve the settlement after petitioner, in a request prepared by prior counsel, represented to the Commission and the carrier that the settlement was a settlement of all claims of Mr. Triste "and his family."

The petitioner here contends that the carrier is not entitled to such an offset because "the children were not duly and legally represented in the settlement." She contends, relying on Rule 17(g) of the Rules of Civil Procedure, that before the children's potential claims could be settled, a guardian ad litem had to be appointed by the Court.

We disagree with petitioner's reading of Rule 17(g). Rule 17(g) provides that where rights of infants are involved, "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action *or shall make such other order as it deems proper for the protection of the infant or incompetent person*" (emphasis supplied). This Court has previously stated that the use of the word "or" in the underscored portion means that appointment of a guardian ad litem is not mandatory. *Nesbitt v. Nesbitt*, 1 Ariz.App. 293, 402 P.2d 228 (1965). Petitioner's own brief acknowledges that "there was judicial authorization for this execution" as "next best friend." We believe that Rule 17(g) has, therefore, been fully complied with.

Petitioner also argues that the settlement was deficient in that no bond was posted by Mrs. Triste pursuant to Rule 17(h). However, Rule 17(h) does not require that a bond be posted before an action is filed and settlement entered into; it merely provides that a bond must be filed before there is a distribution of proceeds to a minor. The record in this case does not reflect that there has ever been any actual distribution of assets to the minors; it reflects only that the remaining proceeds of the settlement are in the estate of the decedent. The settlement agreement itself provided that a guardian ad litem would be appointed to represent the minor children

---

* The net amount of proceeds sought to be set off, less than $200,000.00, excludes the attorneys' fees and amounts expended for Mr. Triste's care before his death. It also excludes the settlement share of the third minor child, conceived after the industrial injury and for whom, as discussed *infra*, death benefits are not allowed.

in any subsequent allocation. We see no procedural defect with respect to the settlement.

■ Even if we assume that there was some technical deficiency in Mrs. Triste's representation of her children in the settlement, we cannot conclude in the circumstances of this case that the carrier must be denied the setoff which the Commission awarded it. There is no suggestion that petitioner, or anyone else with an interest in this matter, wishes to undo the settlement which was made, and upon which proceeds have already been paid. This settlement was approved by the carrier on the petitioner's representation that it was a valid settlement of the family's rights. Under ordinary principles of estoppel, a party to a settlement is not entitled to keep the benefits of it while renouncing the burdens. *Tovrea Packing Co. v. Livestock Sanitary Board*, 44 Ariz. 151, 34 P.2d 420 (1934); *Citizens Suburban Co. v. Rosemont Development Co.*, 244 Cal.App.2d 666, 53 Cal.Rptr. 551 (1966); *Dubail v. Medical West Building Corp.*, 372 S.W.2d 128, 132 (Mo.1963); 31 C.J.S. Estoppel §.110(2) at 566.

We recognize that a different result might be reached if, in fact, the children's interests were not properly represented in the settlement, as, for example, if the mother had absconded with the settlement proceeds or had committed some fraud in connection with the children's interests. There is no such showing here. *See In re Estate of Milliman,* 101 Ariz. 54, 415 P.2d 877 (1966), in which the decedent was a bigamist, and a settlement with the putative wife was held not to bind the original wife. Petitioner's complaints here go only to the form and not to the substance of the children's representation.

■ Petitioner additionally argues that the Commission acted arbitrarily in appointing her the guardian of the children for purposes of the workmen's compensation proceeding. She urges that the Commission should have appointed Arthur Hutton, the person who was appointed by the Superior Court as conservator. There is no showing that the widow was any less able than Mr. Hutton to represent the children's interest in the workmen's compensation proceeding. The Commission has broad discretion in such matters. A.R.S. § 23–1066. There is no suggestion here that there is any conflict between the interests of the mother, the children, and the court-appointed conservator. Indeed, counsel for petitioner has avowed that he represents all three interests.

■ The next issue presented by petitioner is whether death benefits should be awarded for Maria Triste, the child conceived after the industrial injury but before the tragic episode on the operating table. The Commission denied benefits. We must agree. The question is governed by the language of A.R.S. § 23–1064(B) which provides:

"Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee and the dependent's right to any death benefit shall become fixed as of such time irrespective of any subsequent change in conditions . . . ."

Petitioner argues that the purpose of the statute is to prevent a disabled workman from enlarging the carrier's liability by increasing the number of persons dependent upon him, and that it should not have application where the question is death benefits. We believe that the answer to the argument is controlled by a decision of our Supreme Court in *Magma Copper Co. v. Naglich,* 60 Ariz. 43, 131 P.2d 357 (1942). There the court denied death benefits for a child who was not conceived at the time of the industrial injury. In that case, as here, the employee died after apparently imperfect surgical procedures. The Court there stated, with reference to the predecessor of § 23–1064(B), as follows:

"[The statute] states explicitly as of what date the question of dependency

should be determined, and fixes it as the date of the injury, regardless of the time of death, stating that no change of condition subsequent to the injury can affect the dependency. It is obvious that the minor child of deceased was not, and could not have been, a dependent at the time of the injury." *Naglich, supra,* 60 Ariz. at 55, 131 P.2d at 362.

*See also Ezell v. Industrial Commission of Arizona,* 23 Ariz.App. 448, 533 P.2d 1185 (1975).

■ The final issue is whether the appropriate burial allowance is that provided by the statute in effect at the time of the decedent's injury, or the statute in effect at the time of his death. At the time of the injury, A.R.S. § 23–1046(A)(1) provided for a $300 allowance. This was amended in 1973 to call for an $800 allowance. Petitioner argues that the allowance should be that in effect at the time of death, but the matter is governed by the decision of this Court in *State Compensation Fund v. Stanke,* 22 Ariz.App. 74, 523 P.2d 801 (1974), in which the Court squarely held that the amount of direct burial expenses became fixed as of the date of the injury, and not as of the date of death:

"Based upon the provisions of A.R.S. § 23–1064B, it is our opinion that the death benefit right here involved, the right to burial expenses not to exceed $300, became fixed as of the date of the decedent's injury. Bearing in mind the provisions of A.R.S. § 1–244, we do not find any indication in the language of the 1971 amendment which would indicate a legislative intention to make the increase to $800 retroactive as to rights which had already become fixed." 22 Ariz.App. at 76, 523 P.2d at 803.

The award of the Commission is affirmed.

NELSON, P. J., and WREN, J., concur.