688 P.2d 1045

**Florence E. MANNEL, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Department of Transportation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 3021.**

Court of Appeals of Arizona, Division 1, Department B.

May 17, 1984.

Rabinovitz, Dix & Rehling, P.C. by Bernard I. Rabinovitz, Tucson, for petitioner.

Sandra Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by James F. Crane, Tucson, for respondents Employer and Carrier.

## OPINION

GREER, Judge.

This is a special action review of an Industrial Commission award granting death benefits, but subjecting them to the compensation insurer's credit from an A.R.S. § 23–1023 lien on specified proceeds from the employee's settlement of his claim with the third party tortfeasor. The issue presented is whether present death benefits that had not matured when the employee's third party claim against the tortfeasor was settled are subject to the credit. We hold that the benefits are subject to the credit, and therefore affirm the award.

The petitioner (wife or widow) is the only dependent of the deceased employee. In September, 1978, the employee suffered a compensable industrial injury caused by negligent third parties. The employee successfully claimed worker's compensation benefits, and he and his wife sued the third parties.[1] The parties subsequently settled,

---

1. The complaint alleged that "the plaintiff has sustained severe and permanent injuries; has undergone and will continue to undergo medical treatment and expense, has suffered and will continue to suffer indefinitely in the future from pain, suffering, aggravation, inconvenience, and in addition, has suffered wage losses in the past and a loss of earnings and earning capacity in the future." It sought "compensatory damages to reasonably and justly compensate

released the third party tortfeasors from all present and future claims,[2] and received the settlement proceeds. The compensation carrier approved the settlement, received reimbursement of compensation already paid to the employee ($24,655.57), and reserved a credit against future liability ($90,194.70),[3] which credit would diminish as the worker's benefits accrued.

After this settlement and approval, the employee's disability benefits continued to accrue, and the compensation carrier applied them to reduce the credit. In April 1982, the employee died. The employee's right to future disability benefits ceased, but the widow's right to death benefits matured. A.R.S. § 23–1045(B), A.R.S. § 23–1046. The credit balance was then approximately $79,000.

The widow claimed death benefits. The compensation carrier denied the claim, and in the alternative subjected the death benefits to the outstanding credit. At the scheduled hearings, the widow established that the industrial injury caused the employee's death. She also testified that she did not know how much of the original settlement proceeds remained, but that what remained was hers by right of survivorship. The administrative law judge issued the award granting death benefits, but subjecting them to the credit. The award was affirmed on administrative review, and this special action followed.

A.R.S. § 23–1023 states, in relevant part:

A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death his dependents, may pursue his remedy against such other person.

\* \* \* \* \* \*

C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid.

■■■ These subsections concern the same subject; they therefore are interpreted as a whole. *Talley v. Industrial Commission,* 137 Ariz. 343, 670 P.2d 741 (App. 1983). The general purposes of this statutory lien are to require the third party to pay what he would normally pay if there were no workers' compensation, to reimburse the carrier for its compensation expenditure, and to allow the compensation beneficiary to enjoy the excess of the damage recovery over compensation. 2A A. Larson, *Workmen's Compensation Law* § 74.16(a) (1983). This statutory lien is an exception to the general rule that an insurance company may not be an assignee or a subrogee of its insured's tort claim. *Talley v. Industrial Commission,* slip op. at

plaintiffs for their losses," punitive damages, costs, and other relief.

**2.** The release applies to "all claims, actions, causes of action, claims for relief, claims for loss of consortium, demands, rights, damages, costs, expenses or compensation whatsoever which [they] now have or may have on account or in any way growing out of the personal injuries sustained by [the employee] ...." It also acknowledges that the employee "may have sustained injuries that are presently unknown to him or anyone else and that there may be unforeseen consequences for both such known and unknown injuries and it is [their] express intention ... that all such injuries and potential injuries and potential consequences thereof are covered by and included in this release."

**3.** There are two approval agreements. Concerning the compensation carrier's credit, the first states that the satisfaction of the carrier's lien "is not intended to and does not affect the rights or obligations of [the employee, his employer, and the compensation carrier] under the workmen's compensation laws of this state as to future benefits that may be due to [the employee] ... or future credits that may be due [the compensation carrier and the employer] ...." The second states that this credit "shall apply to all heretofore incurred but unpaid medical benefits and disability compensation, if any, and to all future medical benefits and disability compensation for which [the carrier] may become liable by virtue of a Notice of Claim Status issued by [the carrier], or an award of the Industrial Commission of Arizona."

5-6. The statutory terms determine whether a lien is allowed. *Sunstate Equipment Corp. v. Industrial Commission*, 135 Ariz. 477, 662 P.2d 152 (App. 1983). If a lien is allowed, it applies to the entire third party recovery (less expenses and attorney's fees), even though this recovery includes damages not compensated under workers' compensation (such as pain and suffering, loss of pleasures in life, and a spouse's loss of consortium). *Liberty Mutual Insurance Co. v. Western Casualty & Surety Co.*, 111 Ariz. 259, 527 P.2d 1091 (1974).

The hearing judge relied on *Triste v. Industrial Commission*, 25 Ariz.App. 489, 544 P.2d 706 (1976) as authority for the award. The widow contends that *Triste* is not controlling due to factual differences and new arguments that she raises which were not addressed in *Triste*.

In *Triste*, the carrier was entitled to have its death benefit obligation offset by a § 23–1023 lien on settlement proceeds. The deceased employee had had a compensable back injury, but while undergoing surgery for it suffered a cardiac arrest. He was comatose for over three years until he died. Before his death, his wife sued for medical malpractice in the capacity of his guardian and next best friend of the minor children. With the compensation carrier's consent, she settled and executed a general release for all present and future claims. After the employee died, the wife and her minor children claimed workers' compensation death benefits. Benefits were granted, but offset by a lien on the settlement proceeds. On review, the claimants conceded that the lien properly applied to offset the widow's death benefits and would properly apply to offset the children's, provided the children were properly represented in the third party settlement; claimants argued the children were not properly represented. The court rejected the challenge to the representation and affirmed the award.

▬ The widow argues that *Triste* is factually different. She contends the third party suit in that case must have involved a wrongful death claim because the children otherwise had no separate claim for relief. It is true that children do not have a separate claim, *Jeune v. Del E. Webb Construction Co.*, 77 Ariz. 226, 269 P.2d 723 (1954), *overruled on other grounds City of Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803 (1972) (recognizing spouse's claim for loss of consortium), however it does not follow that the children sued the third party for wrongful death. The children had potential wrongful death claims. A valid compromise of those claims subjected their subsequently matured death benefits to the lien credit: "[I]f the settlement was a valid compromise of the *potential* claims of the children, then the carrier would be entitled to set off the net amount of the settlement proceeds after deducting the expenditures for the deceased against its obligation for payment of death benefits." *Triste v. Industrial Commission*, 25 Ariz.App. at 491, 544 P.2d at 708 (emphasis added).

*Triste* therefore is not factually distinct. Here the widow also had a potential wrongful death claim which she compromised. The case at bar is even stronger, because unlike the children in *Triste*, here the widow had an *actual* claim for loss of consortium when the claim was settled.

The widow next argues that *Triste* did not address the statutory interpretation arguments that she now presents. We agree. *Triste* resolved only the narrow question of whether the children's claims were effectively compromised. Although it did not address her arguments, it assumed a rule contrary to the widow's position. *Triste* interpreted § 23–1023(C) to give the compensation carrier "a lien in the amount actually collectible from the [third party tortfeasor] to the extent of the carrier's obligation for *compensation benefits*." *Triste v. Industrial Commission*, 25 Ariz. App. at 491, 544 P.2d at 708 (emphasis added). Compensation benefits include medical benefits, disability benefits, and death benefits. *See* A.R.S. § 23–901(4). Furthermore, this interpretation is consistent with the general purpose of the lien

statute to reimburse the carrier for its compensation expenditure.

■ The widow argues that this interpretation conflicts with the terms of § 23–1023. She relies on the general principle that disability benefits are distinct from death benefits. We agree that benefits are an independent statutory right that do not derive from the decedent. A worker's compromise of his rights to workers' compensation medical expenses and disability benefits does not affect the rights of his dependent's death benefits. *See, e.g., Kay v. Hillside Mines, Inc.,* 54 Ariz. 36, 91 P.2d 867 (1939); *accord* 2 A. Larson, *supra,* § 64. We disagree, however, that this general principle supports the widow's statutory interpretation arguments.

■ The widow first argues that the lien applies to only the employee's third party recovery because subsection (A) allows only the injured employee to "pursue *his* remedy against such other person." A.R.S. § 23–1023(A) (emphasis added). This interpretation of "his" ignores the immediately preceding phrase referring to the employee's dependents if he should die.[4]

Additionally, the widow's interpretation is anomalous because the injured employee and his dependents may have simultaneous civil remedies: a survival action brought by the personal representative for the decedent's estate, *see In Re Estate of Milliman,* 101 Ariz. 54, 415 P.2d 877 (1966); *Barragan v. Superior Court,* 12 Ariz.App. 402, 470 P.2d 722 (1970), and a wrongful death action brought in the name of the personal representative or the surviving spouse for the benefit of the statutory beneficiaries, *see* A.R.S. §§ 12–611, 12–612, 14–3110. Both may have simultaneous claims for workers' compensation: the deceased employee's estate for benefits that accrued while the deceased was alive, *see Reed v. Industrial Commission,* 104 Ariz. 412, 454

P.2d 157 (1969), and the dependents for death benefits, *see* A.R.S. § 23–1046.

■ The widow next argues that if only the injured employee pursues his third party claim, the lien applies to offset his benefits only. First, this argument ignores the fact that the injured employee's third party recovery precludes the dependent's independent wrongful death recovery. *See e.g., Mellon v. Goodyear,* 277 U.S. 335, 48 S.Ct. 541, 72 L.Ed. 906 (1928).[5] Second, the employee's third party recovery is the only fund from which the compensation carrier can be reimbursed for its compensation payments. The widow's argument would be persuasive if the dependents had a viable wrongful death claim. In that case, the carrier would have a separate fund for reimbursement for death benefits. *Cf. Roberts v. All American Engineering Co.,* 104 N.J.Super. 1, 248 A.2d 280 (1968) (lien applied only to employee's benefits because widow was not a party to the third party settlement and had a viable wrongful death claim). However, in the present case the widow participated in the third party settlement, and compromised both her actual loss of consortium claims and her potential wrongful death claim. The effect of the settlement is to settle her claims.

The widow next argues that if only the injured employee is receiving compensation benefits when the claim is settled, the lien applies to offset his benefits only because subsection (C) allows the lien "to the extent of *such* compensation and medical, surgical and hospital benefits paid." A.R.S. § 23–1023(C) (emphasis added). She interprets the word "such" to refer to the compensation benefits paid to the compensation beneficiary when the third party claim was settled. Although this is a possible interpretation, we disagree that it is the most natural one.

---

**4.** Section 23–1023(B) makes the intended reference clear: "if the employee entitled to compensation under this chapter, or his dependents, does not pursue *his or their* remedy against such other person ...." A.R.S. § 23–1023 (B) (emphasis added).

**5.** This rule has been criticized. *See, e.g., Sea-Land Services Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (refusing to extend traditional rule to maritime law). *See generally* 25A C.J.S. Death § 47(b) (1966).

■ The predecessor to the current § 23–1023 required the claimant to elect between his civil remedy and workers' compensation. *See, e.g.,* Laws 1925, Ch. 83. § 66. The current version eliminates this election and requires the carrier to pay "compensation and medical, surgical and hospital benefits ... as provided in this chapter ...." A.R.S. § 23–1023(C). The revision provides for the compensation carrier's reimbursement by giving it "a lien on the amount actually collectable from such other person [the third party] to the extent of such compensation and medical, surgical and hospital benefits paid." A.R.S. § 23–1023(C). Because the carrier is required to pay all compensation, including death benefits, even if the third party claim is pursued, death benefits should be included in the compensation benefits that the lien offsets.

■ The widow also argues that any ambiguity in § 23–1023 should be resolved in her favor to achieve the remedial purpose of the workers' compensation law. One purpose of § 23–1023, however, is to reimburse the compensation carrier for its expenditure.

■ The issue was raised at oral argument that death benefits should be excluded from § 23–1023 because they are not specifically included in the statute. In *Hornback v. Industrial Commission,* 106 Ariz. 216, 474 P.2d 807 (1970), the Arizona Supreme Court recognized that absent carrier approval of a third party settlement, a worker was not entitled to reopen his claim and thereby receive additional benefits, even though the original settlement was for $10,000, whereas the benefits awarded were only accident benefits and $266.06. The supreme court rejected the worker's argument that since the settlement exceeded the compensation benefits, carrier approval was unnecessary because the carrier

had no interest in the settlement, not being liable for any deficiency in the settlement.

The supreme court was unable to accept the worker's argument because

it ignores the fact that the employee in this action is seeking to reopen his claim and seek more compensation.

106 Ariz. at 220, 474 P.2d 807. The supreme court's reasoning implies that carrier approval of a third party claim is a prerequisite to reopening because the carrier is entitled to protect its subrogation rights to "all rights of the employee against a third party tortfeasor," *id.* at 219, 474 P.2d 807, including those rights which would reimburse reopening benefits. This is so even though § 23–1023 does not specifically mention reopening benefits. Since the supreme court recognizes a carrier's interest in protecting its lien to reimburse the carrier's liability for reopening benefits, we cannot say that the carrier lacks an interest in the settlement for reimbursement of death benefits.[6]

We recognize conflicting out-of-state authority on this question.[7] Some cases rely on dissimilar statutes. *E.g., Transcontinental Insurance Co. v. Walsh,* 621 S.W.2d 461 (Tex.App.1981) (statute applied the lien to third party recovery by "a workman's compensation beneficiary ... entitled to compensation ...."). Others are less obviously distinguishable, *see, e.g., Cresci v. Mike Krasilousky Trucking Co.,* 5 A.D.2d 569, 172 N.Y.S.2d 322 (1958), and often rely on the distinction between disability and death benefits, *see generally* 2A A. Larson, *supra,* § 74.30(e). In the final analysis, however, the terms of § 23–1023, not out-of-state authority, are determinative.

■ Finally, the widow argues that the application of a § 23–1023 lien to offset death benefits violates the Arizona constitutional provision on workers' compensa-

---

6. A. Larson (2A A. Larson, *Workmen's Compensation Law,* §§ 71.20, 74–16(a) (1983)) recognizes that the objectives of a good workmen's compensation statute are many and varied, and "with all these balls to be kept in the air at the same time, it is perhaps not surprising that a

few statutes have perfectly performed this juggling act." § 74.16 at 14–355.

7. Other cases are consistent. *E.g., Richardson v. U.S.F. & G.,* 102 So.2d 368 (Miss.1958).

tion. *See* Ariz. Const. Art. 18, § 8.[8] This paragraph prohibits a reduction in the percentages and amounts of compensation provided in the original worker's compensation act. *See Adkins v. Industrial Commission*, 95 Ariz. 239, 389 P.2d 118 (1964). The widow's death benefits have not been reduced; she is credited with the full amount allowed by A.R.S. § 23–1046. The compensation carrier, however, is not required to make an actual payment of death benefits until the credit is exhausted.

For the foregoing reasons, the award is affirmed.

MEYERSON, P.J., and FROEB, J., concur.

---

**8.** Article 18, section 8 states in relevant part:

The percentages and amounts of compensation provided in House Bill No. 227 enacted by the Seventh Legislature of the State of Arizona, shall never be reduced nor any industry included within the provision of said House Bill No. 227 eliminated except by initiated or referred measure as provided by this Constitution.