56 P.3d 52

**Monica J. GREER and Warner W. (Bill) Greer, her husband, Plaintiffs–Appellants,**

v.

**TRAVELERS PROPERTY CASUALTY COMPANY, Defendant–Appellee.**

No. 1 CA–CV 01–0397.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 3, 2002.

John H. Westover, Phoenix, Attorney for Plaintiffs–Appellants.

Sanders & Parks, P.C., by Jonathan F. Weisbard and Kathryn M. Epperson, Phoenix, Attorneys for Defendant–Appellee.

### OPINION

EHRLICH, Judge.

¶ 1 This case involves the application of Arizona Revised Statutes ("A.R.S.") § 23–1023(C) (1995) to a workers' compensation carrier's lien against a medical-malpractice settlement when the malpractice occurs after the industrial injury giving rise to the lien. We conclude that the lien does not apply to benefits paid before the malpractice but that it does apply to the amounts expended by the carrier after the malpractice.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 While working at Saks Fifth Avenue in January 1996, Monica Greer suffered an aggravation of her carpal tunnel syndrome and arthritic condition. The injury was compensable in accordance with the workers' compensation laws, and Travelers Property Casualty Company, the carrier for the store, began paying benefits to Mrs. Greer.

¶ 3 Mrs. Greer's injuries persisted, and, in May and June 1997, a physician performed surgery on her wrists. Travelers paid for the surgeries and continued to pay workers' compensation benefits to Mrs. Greer.

¶ 4 Mrs. Greer continued to experience pain at the base of both thumbs, however, and so, in an effort to relieve that pain, the same physician decided to surgically remove the trapezium bone from Mrs. Greer's right wrist. The surgery took place on September 22, 1998. However, the surgeon removed the wrong bone, the scaphoid bone instead of the trapezium bone, and the removal of the scaphoid bone caused Mrs. Greer's wrist to collapse. Another physician then performed surgery to reconstruct Mrs. Greer's right wrist. Travelers paid for both procedures and continues to pay workers' compensation benefits to Mrs. Greer.

¶ 5 At Mrs. Greer's request, Travelers reassigned the medical-malpractice claim to her. A.R.S. § 23–1023(B). In conjunction with the reassignment, Mrs. Greer agreed to pay Travelers its statutory lien on any recovery from the malpractice claim. The parties did not agree, though, to the scope or amount of the lien.

¶ 6 Mrs. Greer and her husband, Warner W. ("Bill") Greer, filed a medical-malpractice case against the surgeon and a declaratory-judgment action against Travelers to determine the amount of the Travelers lien. After the Greers settled their claim against the physician, Travelers moved for summary judgment on the scope of its lien. It sought to recover all workers' compensation benefits paid, regardless whether the benefits were paid before or after the malpractice or whether they in fact related to benefits paid as a result of the malpractice.

¶ 7 The Greers filed a cross-motion for partial summary judgment. They contended in part that the Travelers lien against the medical-malpractice proceeds should be limited to the benefits paid as a result of the malpractice.

¶ 8 The trial court granted summary judgment to Travelers, and denied the Greers' cross-motion and subsequent motion for reconsideration. The Greers then appealed.

## DISCUSSION

■ ¶ 9 We first address two issues: Whether Travelers is entitled to a lien for workers' compensation benefits paid before the medical malpractice and whether it is entitled to a lien for benefits paid after the malpractice. If the latter is answered in the affirmative, there is a third issue: Whether the lien is limited to the benefits related to the malpractice.

¶ 10 The lien statute, A.R.S. § 23–1023(C), provides:

> If [the employee entitled to compensation] proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. This lien shall not be subject to a collection fee. The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery.

■ ¶ 11 Generally, the purposes of these statutory liens

> are to require the third party to pay what he would normally pay if there were no workers' compensation, to reimburse the carrier for its compensation expenditure, and to allow the compensation beneficiary to enjoy the excess of the damage recovery over compensation.

*Mannel v. Indus. Comm'n,* 142 Ariz. 153, 155, 688 P.2d 1045, 1047 (App.1984). Section 23–1023 has been applied in a medical-malpractice context. *Lavello v. Wilson,* 150 Ariz. 235, 238, 722 P.2d 962, 965 (App.1985).

¶ 12 We and Travelers are cognizant of the inequity that can result in a situation such as this case. There has been an injury that is compensable according to the workers' compensation law. There also is an injury for which a third party is responsible. However, the third party is not responsible for all of the benefits paid by the carrier, and yet the

carrier seeks a lien on the third-party recovery for all benefits paid. *See* 6 Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 112.02(5) (2000)("LARSON TREATISE"). Travelers submits that, nonetheless, the result is one required by law. We agree in part.

¶ 13 Section 23–1023(C), A.R.S., defines "the amount actually collectable" as "the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery," and there is substantial Arizona case law construing the "total recovery" to which a lien may apply as including an employee's total recovered damages in a third-party suit, regardless whether the damages were compensable according to the workers' compensation law. *See Liberty Mut. Ins. Co. v. W. Cas. & Sur. Co.*, 111 Ariz. 259, 260, 527 P.2d 1091, 1092 (1974) (holding that lien attaches to entire recovery regardless whether damages correspond to items compensable according to workers' compensation law); *see also Hendry v. Indus. Comm'n*, 112 Ariz. 108, 109, 538 P.2d 382, 383 (1975)(citing *Liberty Mutual* as dispositive and holding that lien attaches to total recovery); *Martinez v. Indus. Comm'n*, 168 Ariz. 307, 309–10, 812 P.2d 1125, 1127–28 (App.1991)(holding that "the statute unambiguously states that the lien attached to the 'total recovery' obtained from a third party," including a spouse's segregated recovery for loss of consortium); *Mannel*, 142 Ariz. at 156, 688 P.2d at 1048 (relying on *Liberty Mutual* and holding that lien attaches to entire third-party recovery, including damages not compensable under workers' compensation); *Triste v. Indus. Comm'n*, 25 Ariz.App. 489, 544 P.2d 706 (App.1976)(holding that lien for death benefits paid extends to children's portion of malpractice settlement); *but see State Comp. Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987) (holding that "the 'amount actually collectable' does not include interest accrued on the recovery prior to disbursement."); *cf. Lou Grubb Chevrolet v. Indus. Comm'n*, 174 Ariz. 23, 29–30, 846 P.2d 836, 842–43 (App.1992)(holding that, even though separate, subsequent, non-industrial tort aggravated industrial injury, thus requiring carrier to assume liability for treatment, carrier did not have lien against settlement of non-industrial tort). Section 23–1023(C) also states that a carrier "shall have a lien ... to the extent of such compensation and medical, surgical and hospital benefits paid."

¶ 14 Travelers insists that we must construe this reference to provide for a lien consisting of all benefits paid by the carrier even if the benefits pre-date the third-party injury that formed the basis of the third-party recovery. In fact, the statute is silent on the issue of the scope of the lien in a case such as this when the third-party tort against which the lien applies occurs after the industrial injury. *See* LARSON TREATISE § 112.02(5); Dennis R. Kurth & John C. Rea, *Exclusivity and Third Party Liability*, ARIZONA WORKERS' COMPENSATION HANDBOOK, 12.3.3 (Ray Jay Davis et al., eds., 1992).

¶ 15 In *Liberty Mutual*, three employees received minor industrial injuries. They were treated for their injuries, but there was extensive damage to their vision when toxic materials were left in their eyes by the treating physician. The employees settled with the physician. The insurance carrier then claimed and the employees objected to a lien on the full amount of that settlement. Specifically, the employees "urged that Liberty Mutual's lien did not embrace that portion of the settlement proceeds attributed to items of damage recoverable in a civil suit but not covered under workmen's compensation." 111 Ariz. at 260–61, 527 P.2d at 1092–93. Thus at issue were the portions of the third-party recovery to which a lien would apply. The court stated:

Larson suggests, in paragraph 72.65(d) [now § 112.02(5)(d)], that the best solution would be *amendments to third party statutes* so that the employer's carrier in being reimbursed out of the malpractice damages is allowed only so much of his outlay as was caused by the malpractice and that if the judgment in malpractice segregates non-compensable and compensable items, the employer's reimbursement must come only out of that portion of the damages attributed to compensable items.

But we think this is plainly a matter for the Legislature and was so recognized by

Larson when he said that the *"best solution would be amendments to third party statutes * * *."* The Legislature has provided for a lien against the "amount actually collectible (sic)" from the third party and "the amount actually collectible (sic) shall be the total recovery less reasonable and necessary expenses including attorney's fees actually expended * * *." There is no principle of law short of constitutional infirmities in the statute which would permit us to set aside or ignore the express language of the Legislature.

*Id.* at 261–62, 527 P.2d 1091.

¶ 16 However, the court in *Liberty Mutual* did not need to resolve whether the carrier should be allowed only so much of its outlay as was caused by the post-industrial-injury malpractice because the malpractice ultimately constituted the compensable injury. The issue in this case is whether to allow the employee's recovery on the malpractice judgment to be reduced by the workers' compensation benefits paid prior to the malpractice that was the source of the third-party recovery. In this regard, we are mindful of the mandate that we construe the statute to avoid "a windfall for any party, be it the employee, employer, or insurance carrier." *Aitken v. Indus. Comm'n,* 183 Ariz. 387, 392, 904 P.2d 456, 461 (1995). Clearly, and unlike the situation in *Liberty Mutual,* it would be a windfall for the carrier to recover those earlier benefits. Section 23–1023(C), A.R.S., was not intended to provide a lien based on benefits paid prior to and independent of the malpractice that formed the basis for the third-party recovery.

¶ 17 The Greers next argue that the removal of the wrong bone was a separate injury, not an aggravation of the original injury. Relying upon *Moretto v. Samaritan Health System,* they contend that the Travelers lien cannot extend to this subsequent injury. 198 Ariz. 192, 8 P.3d 380 (App.2000).

¶ 18 The court in *Moretto* addressed a reassignment issue, A.R.S. § 23–1023(B), not a lien. Moretto sustained an industrial injury to his knee. Then, while he was receiving physical therapy at a hospital, a stool rolled out from under him, causing him to fall and injure his back. Because the back injury was not the direct and natural result of Moretto's industrial injury, this court engaged in a preliminary analysis to determine whether the back injury was a compensable consequence of the industrial injury to the knee. We decided that a connection to work is established if the new, separate injury occurs through treatment of the initial industrial injury (thereby distinguishing the case from *Lou Grubb Chevrolet,* 174 Ariz. 23, 846 P.2d 836). Thus the injury was a distinct injury, separately compensable as well as a compensable consequence of the industrial injury, although we found that § 23–1023(B) could not be applied to serve as a "time bar" for Moretto's tort action. *Id.* at 195 ¶ 15, 8 P.3d at 383. Moreover, the court specifically declined to resolve any question whether the employer and carrier would have a lien if for no other reason than that the carrier was not a party to the action. *Id.* at 197 ¶ 28, 8 P.3d at 385.

¶ 19 There is no dispute that Mrs. Greer's surgeries directly related to the industrial injury, the surgery intended to alleviate her pain by removing the trapezium bone resulting in the removal of the scaphoid bone and the necessity of surgical repair.[1] According to the reasoning expressed in *Moretto,* then, Mrs. Greer's unsuccessful surgery also is a compensable consequence of the industrial injury, regardless whether it is labeled as new or aggravated.

¶ 20 In dealing with the type of damages to which a lien pursuant to A.R.S. § 23–1023(C) applies, the court in *Liberty Mutual* held that the superior court was "without jurisdiction to enter any order or make any factual determination which directly or indirectly affected the future liability of the insurance carrier for compensation." 111 Ariz. at 263, 527 P.2d at 1095; *see also Red Rover Copper Co. v. Indus. Comm'n,* 58 Ariz. 203, 211–12, 118 P.2d 1102, 1106 (1941); A.R.S. §§ 23–946. Travelers contends that, were the superior court to apportion the percentage of

---

1. An "aggravation of the primary injury by medical or surgical treatment is compensable." *Moretto,* 198 Ariz. at 195 ¶ 13, 8 P.3d at 383 (quoting LARSON TREATISE § 10.09(1)); *see also Liberty Mutual,* 111 Ariz. at 263, 527 P.2d at 1095.

benefits paid after the malpractice that was attributable to the malpractice from the percentage that were attributable to the original injury, the court would be invading the province of the Industrial Commission.

¶ 21 We need not wade into the bog of jurisdiction and/or apportionment for several reasons. First, as pointed out by the court in *Liberty Mutual,* such considerations are reposed with the Arizona legislature. *See* 111 Ariz. at 262, 527 P.2d at 1094; *see also Hendry,* 112 Ariz. at 109, 538 P.2d at 383. Second, while equity might suggest that a lien against the malpractice proceeds should be only for benefits paid due to the malpractice injury, workers' compensation benefits are being paid at least in part because of a compensable injury as affected by the malpractice. Third, there are practical considerations given the administrative difficulties attendant to apportionment for both parties to the industrial claim. For example, every medical bill could become the subject of a hearing held pursuant to A.R.S. § 23–1061(J) if the parties could not agree to the apportionment.

¶ 22 For the foregoing reasons, we reverse the grant of summary judgment in favor of Travelers as to the benefits paid prior to the date of the malpractice, September 22, 1998. The benefits paid by Travelers that pre-date the malpractice may not be included in a lien pursuant to A.R.S. § 23–1023(C) against the malpractice judgment. We remand with instructions to enter judgment on this issue in favor of the Greers and to reduce the lien amount by the benefits paid prior to September 22, 1998.

¶ 23 We affirm the grant of summary judgment in favor of Travelers as to the lien based on all benefits paid on and after September 22, 1998.

CONCURRING: PHILIP HALL and DANIEL A. BARKER, Judges.