680 P.2d 1199

Bert A. PUTVAIN (Deceased); Heidi F. Putvain (Alleged Widow); Bert A. Putvain, Jr., a minor; Jason G. Putvain, a minor; Aaron H. Putvain, a minor; Individually and by their Guardian Ad Litem, Heidi F. Putvain; Tammy Lee Putvain, a minor; Individually and by her Guardian Ad Litem, Sharon Putvain Hall, Petitioners,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

National Metals, Respondent Employer,

Transportation Insurance Company, c/o Insurance From CNA, Respondent Carrier.

No. 17207–PR.

Supreme Court of Arizona, In Banc.

March 19, 1984.

Alston, Edwards & Novak, P.C. by Cecil A. Edwards, Jr., Phoenix, for petitioner Heidi F. Putvain.

James A. Overholt, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jennings, Strouss & Salmon by Steven C. Lester and Ronald H. Moore, Phoenix, for respondents Employer and Carrier.

CAMERON, Justice.

We granted Heidi F. Putvain's petition for review of a decision of the Arizona Court of Appeals, Division One, affirming the denial of her request for widow's benefits under the Workmen's Compensation Act, A.R.S. § 23–1064. *Putvain v. Industrial Commission*, 140 Ariz. 153, 680 P.2d 1214 (App.1983). We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5, and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must decide the following issue:

Did petitioner voluntarily abandon her husband prior to his death as defined under A.R.S. § 23–1064(A)(1)?

The facts necessary for a resolution of this issue follow. Petitioner and her deceased husband were married in Vermont in 1973 and lived together as husband and wife until August, 1979. At that time, the couple had an argument concerning decedent's alleged infidelity. As a result, decedent left the couple's home and instituted a divorce action in Vermont which he did not actively pursue. Petitioner countersued for divorce. At the hearing before the administrative law judge, petitioner testified:

Q Is there any reason why you went ahead and countersued for divorce?

A Well, I found out that he was living with someone, and [my attorney] said that would be the easiest way [we] could do it. I think it was after he came to Arizona.

\* \* \* \* \* \*

Q Is there any reason why in the final divorce decree no provision was made for alimony?

A No. He just said he would never pay child support, so I figured there was no sense in even trying to get alimony or anything.

Decedent moved to Arizona. On 2 July 1980 in Vermont petitioner's counterclaim for divorce was granted and a nisi decree entered, to become final on 30 September 1980. Decedent's death on 5 September 1980 was caused by electrocution while working for National Metals. A claim for death benefits was filed 28 November 1980 on behalf of petitioner and her three minor sons. The administrative law judge awarded benefits to the minor children but denied petitioner's claim for widow's benefits. Although the administrative law judge found that the parties were married at the time of the husband's death, and that the applicant was the "wife" of the deceased pursuant to A.R.S. § 23–1064(A)(1), the judge further found that:

> 8. * * * in substance, although it was the deceased who initially actually physically left the marital abode in August of 1979, it is clear from the argument precipitating said leaving, the applicant Heidi had "had it" with the marital relationship and her course of conduct, both factually (by not attempting reconciliation, etc.) and by legal proceedings (regardless of the "technical status" thereof), demonstrated by fact, and the only reasonable inferences to be drawn therefrom, an abandonment of her husband, the deceased, and the marital relationship involved as of September 5, 1980; * * * that the applicant Heidi F. Putvain having, therefore, factually/legally abandoned the deceased as of the subject injury/demise date, she is not entitled to the conclusive presumption of dependency as a "wife" pursuant to the provisions of A.R.S. § 23–1064 A (1).

The relevant portion of the statute in question states:

> The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:
>
> A wife upon a husband whom she has not voluntarily abandoned at the time of the injury.

A.R.S. § 23–1064(A)(1).

The Court of Appeals upheld the administrative law judge's award, holding first that "abandonment under A.R.S. § 23–1064(A)(1) must be determined at the time of injury rather than the time of separation." *Putvain v. Industrial Commission,* 140 Ariz. 153, 155, 680 P.2d 1214, 1216 (App.1983). Second, the court held that "'abandonment' under A.R.S. § 23–1064(A)(1) is not equivalent to 'desertion' under the old domestic relations code," and third that abandonment depended upon "the state of mind of the abandoning spouse, that is, a state of mind incompatible with a desire to continue the marriage relationship * * *." *Id.* at 155, 680 P.2d at 1216. The Court of Appeals then upheld the administrative law judge's finding that the petitioner had abandoned her husband at the time of death.

 We agree with the administrative law judge and the Court of Appeals that the status of the parties must be determined at the time of the accident, *Clark v. Industrial Commission,* 10 Ariz.App. 486, 489, 460 P.2d 22, 25 (1969), and that the parties were still married at the time of the accident. *See White v. White,* 83 Ariz. 305, 309, 320 P.2d 702, 704–05 (1958) (Colorado interlocutory divorce decree did not terminate marriage relationship until six months had elapsed); *Holder v. Industrial Commission of Arizona,* 125 Ariz. 366, 369, 609 P.2d 1066, 1069 (App.1980); 2 Restatement of Conflict of Laws 2d, § 285, at 251 (1971). Under Vermont law, death before a divorce decree becomes final terminates the action for divorce. *See* Vt.Stat.Ann. tit. 15, § 554. "It is well settled that *nisi* divorce decrees do not dissolve the marriages, and that the death of either party before it becomes absolute, abates the suit and it has no effect on the marital status." *In Re Hanrahan's Will,* 109 Vt. 108, 128, 194 A. 471, 481 (1937).

 We do not agree, however, that the evidence reasonably supports the finding by the administrative law judge that "the only reasonable inference to be drawn" from the evidence is that the petitioner abandoned her husband prior to the injury. First, we believe that the meaning of abandonment in our workmen's compensation code is the same as the meaning of desertion in our previous domestic relations code. Thus, we disagree with the state-

ment by the Court of Appeals that because "Arizona had repealed its domestic relations law relative to desertion as a ground for divorce * * * 'abandon' as it appears in A.R.S. § 23–1064 stands alone." *Putvain, supra,* at 153, 680 P.2d at 1216. We believe that unless it affirmatively appears to the contrary, legislative intent is determined at the time the legislature acts. The fact that a parallel statute is later repealed does not relate back to negate the intent of the legislature at the time the remaining statute was first enacted. In the instant case we believe that abandonment as used in the workmen's compensation statute, and desertion as used in our domestic relations code at the time the workmen's compensation code first used the word abandonment, have the same meaning. *See* 2 Larson, Workmen's Compensation Law, § 62.00 (1982). This interpretation complies with the rule that "[q]uestions affecting relationship, such as * * * obligation to support, are determined by the usual statutory and decisional domestic relations law of the jurisdiction, * * *." *Id. See also Clark, supra,* at 490, 460 P.2d at 26 (quoting Larson, *supra*).

In our domestic relations law, we have used the terms "abandonment" and "desertion" interchangeably. *See Andrade v. Andrade,* 14 Ariz. 379, 387–88, 128 P. 813, 817 (1912). We have stated that:

> [t]o establish a case of desertion, it should appear that the wife left her husband of her own accord, without his consent, and against his will, or that she obstinately refused to return, without just cause, upon his request; * * *.

*Andrade, supra,* at 388, 128 P. at 817. In the present case, the wife did not leave the husband. Rather, the husband left the wife, and did not request that she follow him to Arizona. Even though the petitioner had obtained an interlocutory divorce, this decree was not final and there was nothing preventing petitioner, if her husband had evidenced a change of heart, from reconciling with her husband thereby invalidating the divorce decree.

The Court of Appeals seemed to place great weight, however, upon the failure of the petitioner to attempt a reconciliation:

> [a]pparently, no reconciliation efforts were made by either party and, in fact, Heidi wrote Bert a letter while the divorce proceedings were pending, accusing Bert of molesting her sister's child; accusing him of sinful conduct by living with another woman and not supporting his children; and advising Bert that he "deserved to die."

*Putvain, supra,* at 154, 680 P.2d at 1215. At the time decedent received this letter, he was living with another woman in Arizona.

██ A person may divorce a spouse without deserting or abandoning that spouse. The abandoning or deserting party must intend "to break off all marital relations and disavow their obligations and duties *without justification." Lundy v. Lundy,* 23 Ariz. 213, 225, 202 P. 809, 813 (1922) (emphasis added). In the instant case, it is logical to assume that petitioner intended to break off marital relations with decedent at the time of his injury since the finality of their divorce was pending. This did not, however, constitute an abandonment or desertion because petitioner's actions were justified by decedent's conduct.

██ Second, even if abandonment and desertion were not properly used interchangeably, we would still set aside the award. All petitioner did was to respond to abandonment by her husband. With adequate justification she countersued for divorce and wrote a bitter letter to the decedent. We hold that this does not constitute an intent to abandon the deceased. The intent to divorce is not the same as an intent to abandon. Indeed, in some instances abandonment may be a bar to obtaining a divorce by the spouse leaving and a grounds for a divorce by the spouse remaining. We agree with the Georgia Court of Appeals' interpretation of a similar workmen's compensation statute:

> Unlike most states which use an actual dependency test, the Georgia Act conclusively presumes the dependency of the legal wife unless she has voluntarily abandoned or deserted her husband. A legal wife who files a claim within one

year of her husband's death has priority in the payment of death benefits to the exclusion of all other, or secondary dependents. The Board labored mightily to find an "abandonment" by Frances but the meaning of the word cannot be stretched that far. The Board's conclusion (that she was perfectly happy to see her husband go) may be quite correct, but it does not turn her passivity into an active abandonment. A woman is not required by law to dog the heels of a fleeing spouse upon peril of being held the deserter herself.

*Gibbons v. Atlantic Steel Company,* 124 Ga.App. 71, 72, 183 S.E.2d 212, 213–14 (1971) (citations omitted).

We cannot say that the "only reasonable inference to be drawn" is that the petitioner had "voluntarily abandoned" her husband at the time of her husband's death.

The decision and opinion of the Court of Appeals is vacated, and the award is set aside.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.