866 P.2d 858

Rose DUNN (Widow), James Dunn
(Deceased), Petitioner
Employee,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

City of Bisbee, Respondent Employer,

State Compensation Fund,
Respondent Carrier.

No. CV–92–0050–PR.

Supreme Court of Arizona,
En Banc.

Jan. 6, 1994.

Tretschok, McNamara & Clymer by Dale
D. Tretschok and Carol L. Lohmann, Tucson,
for Rose Dunn.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Peter C. Kilgard, Chief Counsel, State
Compensation Fund, Phoenix, and Elizabeth
A. Upham, Tucson, for respondent Employer/Carrier.

**OPINION**

MARTONE, Justice.

We are asked to decide whether the
spouse of a deceased worker has standing to
claim workers' compensation death benefits if
the spouse was married to the worker at the
time of the work-related death but not at the
time the worker suffered the trauma that
caused death. We also must decide if children and stepchildren of a deceased worker
who likewise had no relationship with the
worker at the time of trauma are also entitled to claim workers' compensation death
benefits. Because we find that statutory dependency under A.R.S. § 23–1046 and A.R.S.
§ 23–1064 is determined at the time of death
and not at the time of trauma, we answer
both questions in the affirmative.

**I. BACKGROUND**

The facts are not in dispute. In 1975
James Dunn suffered an on-the-job crush
injury to his foot for which he received workers' compensation benefits from the State
Compensation Fund. In 1978 James divorced his first wife, and in 1982 he married
petitioner Rose Dunn. Rose entered the

marriage with two of her own children, and Rose and James had one child together. James died in 1989.

Rose and the children filed a claim for death benefits with the State Compensation Fund, alleging that James' death resulted from complications caused by the trauma to his foot. After the Fund denied the claim, Rose requested a hearing in the Industrial Commission, which found that Rose and the children had no standing to claim benefits. The court of appeals affirmed the Commission. *Dunn v. Industrial Comm'n*, 171 Ariz. 463, 831 P.2d 839 (App.1991). Relying on this court's decision in *Magma Copper Co. v. Naglich*, 60 Ariz. 43, 131 P.2d 357 (1942), the court of appeals held that Rose and her children had no standing because they were not statutory dependents at the time James suffered the industrial trauma that entitled him to workers' compensation benefits. We

granted Rose's petition for review to examine this troubling issue of statewide importance.

## II. ANALYSIS

We first address the relevant statutes. A.R.S. § 23–1046 provides death benefits for widows and dependents of workers who die as a result of an industrial injury. It specifies who is entitled to benefits as well as how much they will be compensated.[1] A.R.S. § 23–1064 creates a conclusive presumption that some spouses and children are totally dependent upon the deceased worker's income.[2] It further states that questions of dependency will be determined at the time of the injury to the employee. A.R.S. § 23–1064(B). The statutes do not expressly state that they are interrelated.

We first interpreted the widow's and dependents' death benefits statutes in 1927 in

1. A.R.S. § 23–1046 states, in relevant part:
    **A.** In case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following:
    1. Burial expenses, not to exceed three thousand dollars, in addition to the compensation.
    2. To the surviving spouse, if there is no child, thirty-five per cent of the average wage of the deceased, to be paid until such spouse's death or remarriage, with two years' compensation in one sum upon remarriage.
    3. To the widow or widower, if there is a child or children, the additional amount of fifteen per cent of such wage for each child until the age of eighteen years or until the age of twenty-two years if the child is enrolled as a full-time student in any accredited educational institution, the total not to exceed sixty-six and two-thirds per cent of the average wage.
    4. To a single surviving child, in the case of the subsequent death of a surviving husband or wife, or if there is no surviving husband or wife, twenty-five per cent of such average wages or if there is more than one surviving child, twenty-five per cent for one child, and fifteen per cent for each additional child, to be divided among such children share and share alike, but not exceeding a total of sixty-six and two-thirds per cent of the average wage. Compensation to any such child shall cease upon death, upon marriage or upon reaching the age of eighteen years, except, if over eighteen years and incapable of self-support, when he becomes capable of self-support.
        * * *
    .**B.** If the deceased employee leaves dependents only partially dependent upon his earnings for support at the time of the injury, the monthly

compensation shall be equal to such proportion of the monthly payments for the benefit of persons totally dependent as the amount contributed by the employee to such partial dependents bears to the average wage of the deceased at the time of the injury resulting in his death. The duration of compensation to partial dependents shall be fixed by the commission in accordance with the facts shown, and in accordance with the provisions of § 23–1047, but shall in no case exceed compensation for one hundred months.

2. § 23–1064. Presumptions of dependency; determination

    **A.** The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:
    1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury.
    2. A husband upon a wife whom he has not voluntarily abandoned at the time of the injury.
    3. A natural, posthumous or adopted child under the age of eighteen years, or under the age of twenty-two years if enrolled as a full-time student in any accredited educational institution, or over that age if physically or mentally incapacitated from wage earning, upon the injured parent. Stepparents may be regarded as parents, if dependent, and a stepchild as a natural child if dependent.
    **B.** Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee and the dependent's right to any death benefit shall become fixed as of such time irrespective of any subsequent change in conditions, and the death benefits shall be directly recoverable by and payable to the dependent entitled thereto.

*Ocean Accident & Guarantee v. Industrial Comm'n*, 32 Ariz. 54, 255 P. 598 (1927). We held that the children of a worker killed on the job were not entitled to benefits because the worker abandoned his family a number of years earlier. While the workers' compensation statutes then in effect, Laws 1925 ch. 83 §§ 70 and 72, were substantially similar to today's § 23–1046 and § 23–1064, we based our holding on language that has since been deleted from the statutes. Under the old statutes, children were not presumptively dependent upon the deceased worker if the children were not living with the worker at the time of injury or if they still had a surviving parent. Laws 1925 ch. 83 § 72(a)(3). Because the children were neither presumptively nor actually dependent upon the worker when he died, they had no standing to claim benefits.

*Ocean* also articulated general rules about the workers' compensation statutory scheme. We found an interrelationship between § 70 and § 72, thereby adding the conclusive presumptions to the death benefits scheme. If widows and children did not satisfy the requirements of the presumption, they could "take it not as a matter of law resulting from their relationship as natural children or widows, but from their condition as dependents in whole or in part upon the deceased parent or husband." *Id.* at 62, 255 P. at 600. Section 72 also fixed the date for determining dependency at the "date of the accident or injury to the employee." Laws 1925 ch. 83 § 72(b).

Relying on *Ocean*, the court in *Magma Copper Co. v. Naglich*, 60 Ariz. 43, 131 P.2d 357 (1942), decided a case factually similar to the one we decide today. We denied benefits to the child of a worker who died as a result of an industrial injury incurred two years earlier. The child was conceived and born between the date of the traumatic incident and the date of death.

In *Magma* we stated that the statutory scheme as interpreted by *Ocean* requires the compensation carrier to determine dependency at the time of trauma to the employee, not at the time of death. We said "Section 56–960 [3], *supra*, states explicitly as of what date the question of dependency should be determined, and fixes it as the date of the injury, regardless of the time of death, stating that no change of condition subsequent to the injury can affect the dependency." *Magma*, 60 Ariz. at 55, 131 P.2d at 362. We equated injury with traumatic incident. We did not consider fixing dependency at the time of death because it would be "contrary to our holding in *Ocean Acc. & Guar. Co. v. Industrial Comm., supra.*" *Id.* at 56, 131 P.2d at 363.

However, we read *Ocean* differently. *Ocean* is not a case, as here, where trauma and death are separated by time. Nor do we find support for *Magma's* assertion that the determination is made at the time of the traumatic incident "regardless of the time of death." Neither the statutory language of then § 56–960 (today's A.R.S. § 23–1064) nor *Ocean* imply this. The statute only says that the determination is made at the time of injury to the employee. In *Ocean* we stated, "the provision for death benefits was placed in the Workmen's Compensation Act for the purpose of compensating dependents, or those presumed to be dependent, for the loss sustained by them as a result of the *death* of an employee." *Ocean*, 32 Ariz. at 63, 255 P. at 601 (emphasis added). Hence, if *Ocean* implies anything, it implies that when injury results in death, death is the injury.

The *Magma* court also failed to address the change in the language of the dependency determination statute between 1927 and 1942. *See, supra*, note 3. The legislature replaced "accident or injury of the employee" with "injury of the employee." It is our view that, while "accident" logically is synonymous with traumatic incident, the *Magma* court could not rely on statutory language that no longer existed. The court did not explore

---

**3.** In 1942 the death benefits statutes that we discuss today were numbered §§ 56–953 and 56–960, Arizona Code 1939. These statutes were substantively identical to the statutes relied on in *Ocean*. However, Laws 1925 ch. 83 § 72 required dependency determinations to be made at the "date of the *accident or injury* to the employee" while Arizona Code 1939 § 56–960 mandated a determination at the "date of the *injury* to the employee." (emphasis added). This statutory language, which is the only language relevant to our discussion, has not changed since *Magma*.

the deletion of the word "accident" from the statutory scheme.

The *Magma* court felt constrained by *Ocean*,[4] but if *Ocean* had any control over the facts in *Magma*, we do not see it. The court could have fixed the determination at the time of trauma to the employee or at the time of death. Because we disagree with *Magma*'s reliance on *Ocean*, we analyze the statutes anew.

■ As a general rule of interpretation, clear and unambiguous language is given its plain meaning unless absurd or impossible consequences will result. *State v. Wagstaff*, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990). When a statute's language is unclear, our goal is to give it a sensible construction, one that will withstand constitutional challenge. *Id.* We must also interpret a statute to give effect to legislative intent. *Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). The workers' compensation laws should be construed with a view toward advancing the purpose of placing the burden of injury and death upon industry. *Peter Kiewit Sons' Co. v. Industrial Comm'n*, 88 Ariz. 164, 173, 354 P.2d 28, 34 (1960).

■ We are convinced, as was the court in *Ocean*, that § 23–1064 must be construed in conjunction with § 23–1046. Section 23–1064(A) creates a presumption to enhance the efficiency of the death benefits scheme. Those presumed dependent need not go through the process of proving dependency in fact. Section 23–1064 is therefore a companion statute to the controlling statute, § 23–1046.

Even though they must be read in conjunction, it is our view that the two statutes are in conflict as to the date the dependency determination is made. Section 23–1064(B) expressly states that determinations of dependency are fixed at the "date of the injury to the employee," and § 23–1064(A) refers to spouses who have not abandoned the deceased worker "at the time of injury." But § 23–1046(A) provides, in part, for benefits to be made to the "surviving spouse," "widow or widower," and "surviving children." One's widow, surviving spouse, or surviving children, by definition, cannot be determined until the person is dead. Furthermore, § 23–1046(B) addresses the deceased employee who "leaves" dependents who are only partially dependent. One cannot "leave" dependents without first dying. If we construe § 23–1064(B) to fix the determination at the time of trauma and not the time of death, we would eviscerate § 23–1046. Rose is a surviving spouse and her children are surviving children, and they undoubtedly would be entitled to benefits if § 23–1064 did not exist. The two statutes, when read together, create an ambiguity because "injury" in § 23–1064 can mean trauma or death.

We first look to legislative intent. Unfortunately, we have no legislative history to explain what is meant by the clauses in § 23–1064 that refer to the time or date of injury. The legislature may not have contemplated the facts in this case and supposed traumatic incident and death would always be simultaneous. Hence, injury and death would be synonymous. Perhaps the legislature was concerned that people may marry or have children between trauma and death solely to create benefits. This may be a plausible view, but it does not explain the conflict with the apparent intent of § 23–1046. In any event, the legislature's intention is not recorded. We must therefore find an interpretation of "injury" as used in § 23–1064 that does not destroy the definition of beneficiaries under § 23–1046. We today adopt the interpretation that where injury causes death, death is the ultimate injury.

■ We adopt this view because it properly gives benefits to a worker's closest depen-

---

4. The court recognized that Colorado, New York, Oregon, and Washington made dependency determinations for death benefits at the time of death while Nevada and Wisconsin made the same determinations at the time of trauma. Hence, the court could have chosen from two established interpretations. However, it chose the second route because it was not "contrary to *Ocean*." *Magma*, 60 Ariz. at 56, 131 P.2d at 363.

*See also McBride v. Industrial Comm'n*, 97 Colo. 166, 49 P.2d 386 (1935); *Crockett v. International R. Co.*, 176 A.D. 45, 162 N.Y.S. 357 (1916); *Rosell v. State Industrial Acc. Comm'n*, 164 Or. 173, 95 P.2d 726 (1939); *McKay v. Department of Labor*, 180 Wash. 191, 39 P.2d 997, 998 (1934); *Dahlquist v. Nevada Industrial Comm'n*, 46 Nev. 107, 207 P. 1104 (1922); *Kuetbach v. Industrial Comm'n*, 166 Wis. 378, 165 N.W. 302 (1917).

dents, thereby satisfying the purpose of the workers' compensation laws and the specific demand of § 23–1046. As we stated in *Kiewit*, workers' compensation laws were enacted to place the burden of industrial injury and death on industry, not the worker. *Kiewit*, 88 Ariz. at 173, 354 P.2d at 34. It also follows that the burden of an industrial death must not be placed on the worker's surviving family. The denial of benefits to Rose and her children simply because they had no relationship with James when he was traumatized places the burden of the injury wholly on the surviving family. This result is not consistent with legislative purpose.

Furthermore, by making the dependency determination at the time of death instead of the time of trauma, we enhance efficiency in the determination process. Many industrial injuries, such as asbestosis and silicosis, do not occur instantly. They develop over a period of time, and it is difficult to determine the actual date of traumatic incident. In contrast, the date of death is always certain. Advances in medical technology will increase the possibility that workers will live long beyond the date of traumatic injury. In addition, divorces and remarriages are much more common today than in 1942. These issues may not have loomed as large when *Magma* was decided.

We must consider, however, possible reasons why the legislature may have intended the *Magma* interpretation. The Fund argues, as we suggested above, that the legislature may have drafted the statute to curtail abuse. We think this unlikely, but even if so, it is even more unlikely that the legislature would deny benefits to a worker's seven-year-old son or his wife of seven years simply because the statute may be subject to hypothetical abuse. Even if abuse occurred, the legislature could craft a less onerous alternative to deal with it.

We find only one other possible reason for making dependency determinations at the time of trauma instead of the time of death. One could argue that James' industrial injury has not financially burdened his surviving family because the family was not dependent upon James when he suffered his trauma. Because James was already disabled when he married Rose, she and the children were never dependent upon an income that was cut off by an industrial injury. Therefore, they should not have relied on benefits when he died. The Wisconsin Supreme Court used this reasoning when it decided a similar case in 1917. *Kuetbach v. Industrial Comm'n*, 166 Wis. 378, 165 N.W. 302 (1917).

We disagree. It is beyond dispute that the surviving family is suddenly without support when a worker dies from injuries suffered in an industrial accident. It makes no difference whether the worker died instantly or if time elapsed between trauma and death. The family is still without support because the worker either made a wage or received disability benefits just before he or she died. Hence, if we refuse to allow benefits in either instance, we place the burden of industrial death on the worker's family.

In addition, we cannot see why an after-trauma family should be treated differently than a before-trauma family. Both are equally dependent upon the disabled worker's benefits while he or she is alive. This is especially true of children born after the trauma but before death. Children cannot choose parents. It makes no sense to conclude that after-trauma children must take a disabled worker as they find him.

If dependency were determined at trauma and not death, James' first wife would be entitled to death benefits if the couple were still married. But once divorced, the industrial carrier would fortuitously receive a windfall because it would have to pay no one. This illustrates the anomaly that, under *Magma*, the carrier will always benefit from conditions that occur between trauma and death without ever bearing the burden caused by after-trauma conditions. This is not an even-handed allocation of burdens, and it is not the result that the legislature intended. It is more likely that the legislature intended the carrier to take the good with the bad. By making dependency determinations at death, fortuitous windfalls are offset by similarly fortuitous burdens.

It also may be argued that our interpretation is inconsistent with the plain language of § 23–1064(B). At first glance, one may con-

clude that this subsection can only be referring to those situations where conditions occur between trauma and death. Hence, "injury" must be synonymous with traumatic incident. We disagree. "Injury" cannot mean traumatic incident in this subsection and be consistent with § 23–1046. If determinations are made at the time of trauma irrespective of subsequent conditions, a spouse who divorces the injured worker in the period between trauma and death would have a claim for death benefits. But § 23–1046 states that only surviving spouses are entitled to benefits, not ex-spouses. If "injury" means traumatic incident, § 23–1064(B) directly contradicts the plain meaning of § 23–1046. Because § 23–1046 identifies the proper beneficiaries and is therefore the controlling portion of the statutory scheme, we cannot rationally conclude that § 23–1046 is usurped by § 23–1064(B). While defining injury as death for the limited purpose of § 23–1064(B) may appear counter-intuitive, the alternative is worse. Widows and surviving children would not be "widows" and "surviving children" under § 23–1046. We must construe the statute to avoid irrational results.

■ Our interpretation not only gives life to § 23–1046, but also avoids serious constitutional problems. The constitution prohibits the abrogation of rights of action to recover damages for injuries. Ariz. Const. art. 18, § 6. However, because of the exception to art. 18, § 6 contained in art. 18, § 8, the state may deprive a worker of a cause of action for industrial injuries if, by failing to elect out of the workers' compensation scheme, the worker has compensation benefits. *State ex rel. Industrial Comm'n v. Pressley*, 74 Ariz. 412, 250 P.2d 992 (1952). When no such election occurs, the worker's remedy is his or her compensation benefits. In turn, a deceased worker's family cannot bring a wrongful death suit if the worker failed to elect out of the scheme and subsequently died from industrial trauma. Article 18, §§ 6 and 8 thus work together. See *Anderson v. Industrial Comm'n*, 147 Ariz. 456, 711 P.2d 595 (1985). However, if dependency determinations are made at the time of trauma, after-trauma families cannot recover even worker's compensation benefits. Thus, these families have no remedy at all. Because this result has serious constitutional implications, it cannot be the interpretation that the legislature intended. Our interpretation today avoids this problematic result.

So, too, art. 18, § 8 requires that compensation be paid to an injured worker "and to his dependents, as defined by law, in case of his death." Whether the law may define dependents to exclude widows and children who are in fact dependent upon the deceased worker is a serious question, which our construction avoids. *Cf. Alvarado v. Industrial Comm'n*, 148 Ariz. 561, 716 P.2d 18 (1986) (Art. 18, § 8 prohibits widow's death claim from being time barred before death occurs). *Ford v. Industrial Comm'n*, 145 Ariz. 509, 703 P.2d 453 (1985) (Art. 18, § 8 prevents legislature from narrowing definition of causation).

■ We understand that today's holding is a departure from precedent. Because people should be able to rely on precedent when they conduct their affairs, we recognize the importance of stare decisis. *See White v. Bateman*, 89 Ariz. 110, 113, 358 P.2d 712, 713–14 (1961). We therefore do not take our decision to overrule *Magma* and its progeny[5] lightly. But we are compelled to overrule a case when it is wrongly decided and its application to fact produces a result at odds with legislative intent. *Wiley v. Industrial Comm'n*, 174 Ariz. 94, 103, 847 P.2d 595, 604 (1993). This is such a case because *Magma*'s reliance upon *Ocean* was misplaced. *Ocean* had nothing to do with cases in which trauma and death were not simultaneous. Moreover, *Magma* failed to recognize that in identifying beneficiaries, and not dependents, § 23–1046 (identifying beneficiaries) must control over § 23–1064 (identifying dependents).

---

5. Our court of appeals has addressed similar facts six times: *Tipton v. Industrial Comm'n*, 2 Ariz.App. 339, 409 P.2d 55 (1965); *Coover v. Industrial Comm'n*, 14 Ariz.App. 409, 484 P.2d 21 (1971); *Ezell v. Industrial Comm'n*, 23 Ariz. App. 448, 533 P.2d 1185 (1975); *Triste v. Indus-trial Comm'n*, 25 Ariz.App. 489, 544 P.2d 706 (1976); *Putvain v. Industrial Comm'n*, 140 Ariz. 138, 680 P.2d 1199 (App.1984); and *Dunn v. Industrial Comm'n*, 171 Ariz. 463, 831 P.2d 839 (App.1991) (court of appeals decision of the case that we address today).

Other jurisdictions made dependency determinations at the time of death even before *Magma* was decided. *See, supra,* note 4. Although *Magma* correctly stated that our statute is unique, the purpose of the workers' compensation scheme is universal. Today we join other jurisdictions that make dependency determinations at the time of death in an effort to further the overall purpose of the workers' compensation scheme.

■■■■ We hold that when injury results in death, death is injury under § 23–1064. Therefore, determinations of dependency for death benefits under the workers' compensation scheme are made at the time of the employee's death. Under § 23–1064(A)(1) and § 23–1064(A)(2), a spouse who has not abandoned the deceased worker at the time of death is presumptively dependent upon the deceased. Furthermore, any child who meets the requirements of § 23–1064(A)(3) at the time of the worker's death is also presumptively dependent. All dependency determinations under § 23–1064 and § 23–1046 are fixed at the time of death irrespective of any subsequent change in conditions. A.R.S. § 23–1064(B). To the extent *Magma Copper Co. v. Naglich,* 60 Ariz. 43, 131 P.2d 357 (1942) holds to the contrary, it is overruled.

### III. APPLICATION AND CONCLUSION

■■■■ Because Rose Dunn was married to James Dunn at the date of his death, Rose has standing to make a claim for death benefits under the worker's compensation statute. In addition, James' natural child and his stepchildren [6] also have standing to make claims for benefits, pursuant to any other relevant provisions in § 23–1064 and § 23–1046. The award is set aside and the opinion of the court of appeals is vacated.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.

---

6. Under § 23–1064(A)(1) and (A)(2), Rose and the couple's natural child are presumptively dependent upon James. However, pursuant to § 23–1064(A)(3), James' stepchildren must establish factual dependency before they will be entitled to death benefits.