923 P.2d 848

**George FEDERICO (deceased), Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Maricopa County, DOT, Respondent Employer,**

**Maricopa County, DOT, Respondent Carrier.**

**No. 1 CA–IC 94–0095.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 22, 1996.

Review Denied Sept. 17, 1996.

---

384

Brown, Arenofsky, Squire & Sacco by Eric C. Awerkamp, Mesa, for Petitioner.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

Steven C. Lester, P.C. by Steven C. Lester, Phoenix, for Respondent Employer and Carrier.

## OPINION

WEISBERG, Judge.

The surviving mother ("Claimant") of George Federico ("the deceased") seeks review of an award denying her death benefits. The Administrative Law Judge ("ALJ") concluded that, although Claimant had been partially dependent upon the deceased on the date of his death, she was not entitled to death benefits because of her subsequent receipt of over $200,000 in life insurance proceeds. Claimant contends this was error. In addition, the deceased's self-insured employer, Maricopa County, challenges the ALJ's finding of partial dependency.

We conclude that sufficient evidence existed to establish Claimant's partial dependency and that the ALJ correctly found that her subsequent change in financial condition affected Claimant's right to death benefits. But because we conclude that the ALJ erred in denying Claimant death benefits altogether, rather than terminating them on the date she received the insurance proceeds, we set aside the award.

## PROCEDURAL AND FACTUAL HISTORY

In July 1993, the deceased died in a compensable industrial accident. He was thirty-nine years old, unmarried, and without children. Claimant filed a death benefits claim, Maricopa County denied it, and Claimant timely requested a hearing.

At the ensuing hearing, Claimant, her husband, daughter, and sister-in-law, and a friend of the deceased testified. Their testimony established that the deceased's natural father had abandoned Claimant before the deceased's birth, and that Claimant had married the deceased's stepfather (her "husband") approximately five years later.

Since remarrying, Claimant has worked as a housewife. Her husband has been regularly employed and has supported Claimant. For example, he qualified for a Veterans Administration loan to purchase the home in which Claimant and he have lived for over twenty years. Since about 1983, he has worked for the State of Arizona which provided benefits including health insurance covering Claimant. His monthly income in 1993 was $1800.00. Her husband, however, is an alcoholic, and his drinking consumed about a third of his wages until he stopped in about 1992. He has had other health problems since then.

The deceased began working and contributing to family expenses when he was a teenager. For at least five years before his death, he had his own home and expenses. In 1990 and 1991, the years for which tax returns are of record, the deceased earned over $30,000.00. He did not list Claimant as his dependent for income tax purposes.

Claimant had no records and provided no estimates of either her living expenses or the amount of the deceased's support. She testified, however, that her husband gave her only $680.00 a month and that this was often insufficient for household expenses. She also testified that the deceased helped her with cash and work around the house. For example, he paid for Claimant's groceries about twice a month, sometimes paid her utility bills and her co-payments for doctors and medications, and maintained her car and evaporative cooler. Also, in the two to three years before his death, the decedent had provided materials and labor to replace the roof on Claimant's house, the carpet in it, and to paint it. The carpeting had been a

Christmas gift to Claimant, as were a TV and VCR.

The other witnesses generally corroborated Claimant's testimony concerning the deceased's support of her. Only one witness, though, provided an estimate of the value of the deceased's contribution to Claimant. The deceased's friend and roommate for six years estimated that the deceased gave Claimant at least $50.00 a month.

Finally, although Claimant objected to the relevance of her receipt of life insurance proceeds, she acknowledged being the sole beneficiary of slightly more than $200,000.00 of insurance on the life of the deceased. The record does not disclose when she received these proceeds.

Following the hearing, the ALJ issued an award denying Claimant's claim for death benefits. He found that Claimant's evidence, although weak, was sufficient to establish her partial dependency upon the deceased. He concluded, however, that, because a parent is only entitled to death benefits "during dependency," Claimant's receipt of life insurance proceeds negated her right to death benefits:

> It is found that Mrs. Vega's partial dependency status ceased as of the time she received the insurance proceeds. In the absence of any evidence as to when this occured [sic], it is presumed that a minimal amount of time elasped [sic] between Mr. Frederico's [sic] death and the reciept [sic] by his mother of insurance proceeds.

He therefore denied Claimant death benefits altogether.

Claimant requested review. Among other things, she argued that, even if her receipt of life insurance proceeds had affected her right to death benefits, she nevertheless would be entitled to benefits from the date of the deceased's death until the date she received the life insurance proceeds.

The ALJ summarily affirmed the award. Claimant then brought this special action. This court has jurisdiction under Ariz.Rev. Stat.Ann. ("A.R.S.") sections 12–120.21(B) and 23–951(A).

## DISCUSSION

On review, Claimant asserts that her subsequent receipt of insurance proceeds as a result of the deceased's death is either immaterial or, at most, terminated her right to death benefits when she actually received the insurance proceeds. Maricopa County, in turn, disputes the sufficiency of the evidence supporting the finding that Claimant had been partially dependent upon the deceased.

### A. *Statutory Overview*

A.R.S. sections 23–1046 and 23–1064 control entitlement to death benefits. Subsection 23–1046(A) in relevant part provides:

A. In case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following:

. . . .

2. To the surviving spouse ... to be paid until such spouse's death or remarriage. . . .

. . . .

4. To a single surviving child. . . . Compensation to any such child shall cease upon death, upon marriage or upon reaching the age of eighteen years, except, if over eighteen years and incapable of self-support, when he becomes capable of self-support.

5. *To a parent, if there is no surviving husband, wife or child under the age of eighteen years, if wholly dependent for support upon the deceased employee at the time of his death, twenty-five per cent of the average monthly wage of the deceased during dependency, with an added allowance of fifteen per cent if two dependent parents survive, and, if neither parent is wholly dependent, but one or both partly dependent, fifteen per cent divided between them share and share alike.*

6. To brothers or sisters under the age of eighteen years, if there is no surviving husband or wife, dependent children under the age of eighteen years or dependent parent, the following shall govern:

. . . .

(c) If none of the brothers or sisters is wholly dependent, but one or more are partly dependent, fifteen per cent divided among such dependents share and share alike.

(Emphasis added.).

A.R.S. section 23–1064 is a companion statute to A.R.S. section 23–1046. *Dunn v. Industrial Comm'n,* 177 Ariz. 190, 194, 866 P.2d 858, 862 (1994). It principally creates a conclusive presumption of total dependency applicable to specified spouses and children. A.R.S. § 23–1064(A). In addition, subsection 23–1064(B) provides, in relevant part:

Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee and the dependent's right to any death benefit shall become fixed as of such time irrespective of any subsequent change in conditions....

A.R.S. § 23–1064(B).

### B. *Sufficiency of the Evidence*

Maricopa County asserts that insufficient evidence supports the finding that Claimant was partially dependent upon the deceased. We, however, conclude that the evidence is sufficient.

■ Although the statutes do not define "partly dependent" as used in A.R.S. section 23–1046(A)(5), the supreme court has instructed that the term "dependency ... does not mean absolute dependency [upon the deceased employee] for the necessities of life, but rather that the applicant looked to and relied on the contributions of the workman, in whole or in part, as a means of support and maintenance in accordance with his or her social position." *Waite v. Industrial Comm'n,* 68 Ariz. 299, 303, 205 P.2d 579, 581 (1949) (quoting 58 Am.Jur. *Workmen's Compensation* § 163). This is the majority rule. *See* 2 Arthur Larson, *The Law Of Workmen's Compensation* § 63.11(b), at 11–112 (1994) ("A showing of actual dependency does not require proof that, without decedent's contributions, claimant would have lacked the necessities of life, but only that decedent's contributions were relied on by claimant to maintain claimant's accustomed mode of living.").

The *Waite* court also directed that "the fact that the mother was not dependent on the son for the necessities of life, which she received from the husband, would not and should not deprive her of compensation if her son rendered material assistance in maintaining her in a condition suited to her station in life." *Waite,* 68 Ariz. at 303, 205 P.2d at 581 (quoting *Ogden City v. Industrial Comm'n,* 193 P. 857, 858 (1920)). Larson again supports this interpretation of "partial dependency":

Partial dependency may be found when, although the claimant may have other substantial sources of support from his own work, from property, or from other persons on whom claimant is also dependent, the contributions made by the decedent were looked to by the claimant for the maintenance of his accustomed standard of living.

2 Larson § 63.12(a), at 11–118.

■ Although dependency is determined at the time of the employee's death, *see Dunn,* 177 Ariz. at 196–97, 866 P.2d at 864–65, the trier-of-fact may consider the support which was provided before that date, *see Waite,* 68 Ariz. at 303, 205 P.2d at 581. If this test of dependency is satisfied, subsection 23–1046(A)(5) does not measure compensation by the extent of dependency; the death benefit is 15% of the deceased's average monthly wage whether a parent's partial dependency was minimal or substantial. *See, e.g., Hershkowitz v. Arizona Highway Dep't,* 59 Ariz. 10, 15, 121 P.2d 879, 881 (1942); *see also Federal Mut. Liab. Ins. Co. v. Industrial Comm'n,* 32 Ariz. 293, 296–98, 257 P. 982, 983–84 (1927) (interpreting predecessor to current A.R.S. section 23–1046(B) *not* to apply to partially dependent parents).

■ A determination of dependency generally is a question of fact to which a reviewing court applies a deferential standard of review. *E.g., Waite,* 68 Ariz. at 302, 205 P.2d at 580; *Phillips v. A.O. Smith Corp.,* 39 Ariz. 577, 579, 8 P.2d 1080, 1081 (1932). If, however, the facts are undisputed, a reviewing court may treat the Commis-

sion's determination as a conclusion of law and apply an independent judgment standard of review. *Waite*, 68 Ariz. at 302, 205 P.2d at 580 (setting aside determination that mother was not dependent upon the deceased minor son as result of father's support of her); *see also, e.g., Magma Copper Co. v. Aldrete*, 70 Ariz. 48, 51–55, 216 P.2d 392, 396–97 (1950) (setting aside determination that minor stepchild was dependent upon the deceased employee); *Villapando v. Industrial Comm'n*, 70 Ariz. 55, 58–59, 216 P.2d 397, 399–400 (1950) (setting aside determination that mother was not partially dependent upon the deceased minor son).

■ In the instant case, the ALJ recognized the weakness of Claimant's proof of dependency. Her evidence was anecdotal and mostly unquantified. Although the ALJ attempted to cure the lack of "hard evidence" by calculating a monthly contribution, the resulting figure of $150.00 a month is speculative.

The ALJ also concluded that he could consider the decedent's Christmas gifts to Claimant because he gave them regularly. The ultimate question, however, is whether such gifts constitute support. Although regularity is one factor, others include the nature of the gifts and the recipient's need for them. *Cf.* 2 Larson § 63.12(d), at 11–136 ("[O]ccasional gifts . . . not relied on for support do not establish dependency.") In the current case, the carpet the decedent gave Claimant probably constituted support, but the TV and VCR arguably did not.

Despite these flaws in the evidence and the ALJ's analysis, we conclude that sufficient evidence supports the ALJ's ultimate finding that Claimant was partially dependent upon the deceased. First, because the ALJ's finding is essentially factual and dependent upon the credibility of Claimant and her corroborating witnesses, we apply a deferential standard of review. Second, under the applicable test, Claimant's dependency on her husband does not negate her partial dependency on the deceased, and the relative amounts of their contributions are not dispositive. Rather, the question is whether Claimant relied upon the deceased's contributions to maintain her accustomed standard of living. *See*

*Waite*, 68 Ariz. at 303, 205 P.2d at 581. The evidence that Claimant relied on the deceased to pay for groceries, utilities, and medical expenses, and to improve her house, bolsters the finding of partial dependency. We therefore conclude that there was sufficient evidence to support the ALJ's finding of partial dependency.

### C. *Limitation Of the Hearing To the Dependency Issue*

■ Claimant asserts that the hearing should have addressed only whether she had been partially dependent upon the deceased. As support, she relies on the limitations applicable to claims for compensation and petitions to reopen. Death benefit claims, however, are not analogous.

Initial hearings on claims for compensation generally are limited to determining whether the elements of compensability under A.R.S. section 23–1021 are satisfied. *E.g., Industrial Indem. Co. v. Industrial Comm'n*, 162 Ariz. 503, 508, 784 P.2d 709, 714 (App.1989). Similarly, hearings on reopening are limited to whether the elements for reopening under A.R.S. subsection 23–1061(H) are satisfied. *See, e.g., Sneed v. Industrial Comm'n*, 124 Ariz. 357, 359, 604 P.2d 621, 623 (1979). Separate statutes determine the benefits that flow from a compensable claim or from reopening, *see* A.R.S. §§ 23–1044, –1045, –1061(I), –1062, and if disputes occur, further hearings are necessary to resolve them.

In contrast, A.R.S. section 23–1046 defines both the persons entitled to death benefits and the amount and duration of these benefits. For example, a surviving spouse's entitlement to death benefits terminates at death. *See* A.R.S. § 23–1046(A)(2). Consequently, if a spouse had survived the deceased, filed a claim for death benefits, and then died during the hearing process, surely an ALJ may consider the claimant's death in adjudicating the death benefits claim. *Cf. Gagliardi v. Downing & Perkins, Inc.*, 152 Conn. 475, 208 A.2d 334, 335 (1965) (allowing trier-of-fact to consider change in claimant's dependency occurring after deceased employee's death and before hearing on death benefits claim). We therefore reject Claim-

ant's argument that the ALJ should have determined only whether Claimant had been partially dependent upon the deceased.

### D. *Effect Of Parent's Receipt Of . Life Insurance Proceeds*

Although the ALJ found that Claimant had been partially dependent upon the deceased at the time of his death, it denied her death benefits because she was no longer dependent after she received the $200,000 proceeds from the deceased's life insurance policy. Claimant contends that this was error, arguing that any subsequent change in her financial condition is irrelevant to her claim for death benefits. To support her contention, she relies upon A.R.S. section 23–1064(B), which provides:

> Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee and the dependent's right to any death benefit shall become fixed as of such time irrespective of any subsequent change in conditions. . . .

Maricopa County, however, responds that A.R.S. section 23–1064 deals only with status determinations, such as whether a claimant is a surviving spouse or child on the date of the employee's injury. It argues that the controlling statute is A.R.S. section 23–1046(A)(5), which states that a surviving parent shall receive a death benefit "during dependency." We agree with this reasoning and therefore conclude that a surviving parent is entitled to receive a death benefit only while that parent remains dependent.

The subsection of A.R.S. section 23–1046 that controls the award of death benefits to surviving parents provides:

> A. In case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, *for the period,* and to and for the benefit of the persons following:
>
> . . . .
>
> 5. To a parent, if there is no surviving husband, wife or child under the age of eighteen years, if wholly dependent for support upon the deceased employee at the time of his death, twenty-five per cent of the average monthly wage of the deceased

*during dependency,* with an added allowance of fifteen per cent if two dependent parents survive, and, if neither parent is wholly dependent, but one or both partly dependent, fifteen per cent divided between them share and share alike.

(Emphasis added.). The emphasized language clearly establishes that a surviving parent's right to a death benefit continues only while such dependency continues.

Claimant nevertheless argues that the words "during dependency" refer only to the period in which the deceased's average wage is calculated. We disagree. Such an interpretation ignores the other subsections of A.R.S. section 23–1046(A). None of the other subsections providing for a death benefit, which consists of a percentage of the deceased's average wage, refer to a specific period in which the wage is calculated. Instead, they refer only to "the average wage," or "the average monthly wage." *See* A.R.S. § 23–1046(A)(2)–(4). The sole exception is A.R.S. section 23–1046(A)(6)(b), which refers to "the average monthly wage at the time of injury causing death," and this additional language merely repeats the definition provided in A.R.S. section 23–1041(D). We therefore reject Claimant's contention that the term "during dependency" refers to the period in which the average wage is calculated. Thus, the only reasonable interpretation of this section is that the death benefit is to be paid only during the parent's dependency.

Courts in other states have interpreted similar statutory provisions to mandate death benefits only while the surviving parent remains dependent. For example, in *Peabody v. Jones & Lamson Mach. Co.,* 122 Vt. 431, 176 A.2d 759 (1961), a surviving parent, who was dependent upon her deceased son until she received the proceeds of his life insurance policies, appealed the denial of her claim for death benefits. The Vermont Supreme Court upheld the denial, citing 21 Vt.Stat. Ann. section 634, which provided that a surviving parent was entitled to compensation "during the continuation of a condition of actual dependency." *Id.,* 176 A.2d at 760. The court held that "[t]he statute clearly indicates that the dependency in case of a

parent, whether whole or partial, must have real existence for compensation to be required." *Id.* at 761–62; *see also Terrinoni v. Westward Ho!,* 418 So.2d 1143, 1145–46 (Fla. App.1982) (interpreting a statute providing a death benefit "[t]o the parents, 25 percent to each, such compensation to be paid during the continuance of dependency."). We similarly conclude that the plain language of A.R.S. section 23–1046(A)(5) directs that a surviving parent is entitled to death benefits for only so long as she remains dependent.

While neither *Peabody* nor *Terrinoni* involved statutes similar to A.R.S. section 23–1064(B), we conclude that that statute does not control over A.R.S. section 23–1046. First, our supreme court recently held that "[s]ection 23–1064 is ... a companion statute to the controlling statute, § 23–1046." *Dunn,* 177 Ariz. at 194, 866 P.2d at 862. "Because § 23–1046 identifies the proper beneficiaries and is therefore the controlling portion of the statutory scheme, we cannot rationally conclude that § 23–1046 is usurped by § 23–1064(B)." *Id.* at 196, 866 P.2d at 864. Second, on at least two occasions, our supreme court has interpreted the predecessor to A.R.S. section 23–1046 without mentioning A.R.S. section 23–1064's predecessor.[1] *See Phillips,* 39 Ariz. 577, 8 P.2d 1080; *Federal Mut. Liab. Ins. Co.,* 32 Ariz. 293, 257 P. 982.

Our conclusion does not render A.R.S. section 23–1064(B) a nullity. Rather, this subsection continues to require that any determinations regarding a claimant's status at the time of injury or death remain fixed, regardless of any subsequent change in circumstances. For example, pursuant to A.R.S. section 23–1064(B), a minor child of the deceased at the time of death would retain his right to death benefits even if he were subsequently adopted prior to his eighteenth birthday.

We are aware that, in *Dunn,* the supreme court stated that "[a]ll dependency determinations under § 23–1064 and § 23–1046 are fixed at the time of death irrespective of any subsequent change in conditions." 177 Ariz.

at 197, 866 P.2d at 865. This statement, however, appears just after the court's holding that the use of the term "injury" in A.R.S. section 23–1064 means "death" when the occupational injury has resulted in death. Accordingly, the court was merely restating A.R.S. section 23–1064(B) in light of its new interpretation. The issue whether a surviving parent is entitled to continuing death benefits after the dependency ceases was not before the court, and we do not believe the court would have applied this broad statement to these facts, particularly in light of its holding that A.R.S. section 23–1046 is the controlling statute.

 We also realize that our holding conflicts with the traditional rule that, once a dependent has obtained rights to a death benefit, such rights are not lost by subsequent changes in the dependent's financial position. *See* 2 Larson § 64.43, at 11–242. The only rationale for this rule, however, is administrative convenience. *Id.* at 11–247. Furthermore, the rule does not apply where the applicable statutes expressly provide for the termination of benefits at a particular time or upon the happening of a certain event. *See id.* at 11–242. As a result, this traditional rule has gradually been eroded by statutes that have expressly limited a surviving parent's entitlement to the period in which such dependency continues. *See, e.g., Peabody,* 176 A.2d at 760; *Terrinoni,* 418 So.2d at 1145; *Gagliardi,* 208 A.2d at 335–36. A.R.S. section 23–1046(A)(5)'s provision of benefits only during dependency is such an express statutory limitation.

Accordingly, we conclude that a surviving parent who ceases to be dependent because of changed conditions after the deceased's death is no longer entitled to death benefits pursuant to A.R.S. section 23–1046(A)(5). Claimant's right to death benefits therefore terminated with her receipt of the life insurance proceeds.

### E. *Denial Or Termination Of Death Benefits*

 Claimant next argues that, rather than denying her death benefits altogether,

---

1. Substantially the same language has been in place since 1925. *See* Laws 1925, ch. 83, § 72(b).

the ALJ should only have terminated her death benefits as of the time she actually received the proceeds. We agree.[2]

To support the denial of death benefits, Maricopa County relies on *Gagliardi.* In that case, the Connecticut Supreme Court affirmed the denial of death benefits to a parent even though she was dependent upon the deceased employee at his death and subsequently received insurance and other proceeds. *Gagliardi,* 208 A.2d at 337. The claimant, however, argued only that the proceeds she received after the deceased's death did not affect her claim for death benefits. *Id.* at 335–37. The *Gagliardi* court therefore did not address whether death benefits should have been first awarded and then terminated when the claimant actually received the proceeds. *Id.; see also Peabody,* 176 A.2d 759 (addressing only sufficiency of evidence of change in dependency).

Florida, in contrast, has addressed this question. *See Terrinoni,* 418 So.2d at 1143. In that case, the deceased employee died on October 11, 1980, and his mother, who was the deceased's sole heir and beneficiary, received approximately $150,000.00 from a combination of sources on December 31, 1980. *Id.* at 1145. The appellate court affirmed the award of death benefits from the date of death until December 31, 1980. *Id.*

We agree with Florida's approach. A parent's dependency persists until he or she receives resources that eliminate or reduce his or her dependency in fact. Consequently, the receipt of such resources would justify only the termination of death benefits, not the denial of them. We therefore conclude that the ALJ erred by denying death benefits altogether.

## CONCLUSION

This court must either affirm or set aside an award. *See* A.R.S. § 23–951(D); *Arrowhead Press, Inc. v. Industrial Comm'n,* 134 Ariz. 21, 25, 653 P.2d 371, 375 (1982). Be-

cause we conclude that the ALJ erred by denying death benefits, rather than merely terminating them as of the date Claimant's dependency ceased, the award is set aside.

GRANT, P.J., and PATTERSON, J., concur.

---

**2.** On administrative review, Maricopa County argued that Claimant had the burden of proving and had failed to prove when she received the life insurance proceeds. Maricopa County, however, has not raised this burden of proof argument on appeal. We therefore do not address it.

*Cf., e.g., Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 279–80, 475 P.2d 258, 263–64 (refusing to address issues raised below but not argued on appeal), *modified on other grounds,* 106 Ariz. 345, 476 P.2d 155 (1970).